No. 23-30336

_____

# UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

_____

PLAQUEMINES PARISH,

*Plaintiff-Appellee*,

LOUISIANA STATE, EX REL. ELIZABETH B. MURRILL; LOUISIANA STATE, THROUGH LOUISIANA DEPARTMENT OF NATURAL RESOURCES, OFFICE OF MANAGEMENT, DUSTIN DAVIDSON, SECRETARY,

*Intervenor Plaintiffs-Appellees*,

v.

CHEVRON USA HOLDINGS, INCORPORATED, NAMED AS SUCCESSOR IN INTEREST TO TEXACO E & P, INCORPORATED AND TEXACO, INCORPORATED; CHEVRON USA, INCORPORATED, NAMED AS SUCCESSOR IN INTEREST TO THE CALIFORNIA COMPANY; TEXAS COMPANY; ATLANTIC RICHFIELD COMPANY, NAMED AS SUCCESSOR IN INTEREST TO ARCO OIL AND GAS COMPANY DIVISION OF ATLANTIC RICHFIELD COMPANY,

*Defendants-Appellants.*

_____

On appeal from the United States District Court for the
Eastern District of Louisiana (Barbier, J.)
No. 2:18-cv-05189

---

## BRIEF FOR DEFENDANTS-APPELLANTS

---

COUNSEL LISTED ON INSIDE COVER

GEORGE ARCENEAUX III
LISKOW & LEWIS
1200 Camellia Boulevard, Suite 300
Lafayette, LA 70508

JENNIFER R. KWAPISZ
ARNOLD & PORTER KAYE
 SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710

**Counsel for Atlantic Richfield Company**

PAUL D. CLEMENT
 *Counsel of Record*
C. HARKER RHODES IV
JOSEPH J. DEMOTT
ILAN J. POSNER
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

JENNIFER J. CLARK
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005

STEVEN PAUL LEHOTSKY
LEHOTSKY COHN LLP
200 Massachusetts Ave. NW, Suite 700
Washington, DC 20001

ALEXANDRA WHITE
ERIC J. MAYER
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002

CHARLES S. MCCOWAN III
PAMELA R. MASCARI
KEAN MILLER LLP
II City Plaza
400 Convention St., Suite 700
Post Office Box 3513 (70821)
Baton Rouge, LA 70802

MICHAEL R. PHILLIPS
CLAIRE E. JUNEAU
KEAN MILLER LLP
909 Poydras Street, Suite 3600
New Orleans, LA 70112

**Counsel for Chevron U.S.A. Inc.,
Chevron U.S.A. Holdings Inc., and
The Texas Company**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

### A. Defendants-Appellants

1. Chevron U.S.A. Inc.
2. Chevron U.S.A. Holdings Inc.
3. The Texas Company
4. Atlantic Richfield Company

### B. Attorneys for Defendants-Appellants

1. For Chevron U.S.A. Inc. and Chevron U.S.A. Holdings Inc.:

Paul D. Clement
paul.clement@clementmurphy.com
C. Harker Rhodes IV
harker.rhodes@clementmurphy.com
Joseph J. DeMott
joseph.demott@clementmurphy.com
Ilan J. Posner
Ilan.posner@clementmurphy.com
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
Telephone: (202) 742-8900

Jennifer J. Clark
jennifer.clark@sidley.com
Virginia Seitz
vseitz@sidley.com
Kathleen Mueller
kmueller@sidley.com

SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8111

Steven Paul Lehotsky
steve@lehotskycohn.com
LEHOTSKY COHN
200 Massachusetts Avenue NW Suite 700
Washington, DC 20001
Telephone: (202) 365-2509

Michael R. Phillips (#21020)
mike.phillips@keanmiller.com
Claire E. Juneau (#33209)
claire.juneau@keanmiller.com
KEAN MILLER LLP
909 Poydras Street, Suite 3600
New Orleans, Louisiana 70112
Telephone: (504) 585-3050
Facsimile: (504) 585-3951

Charles S. McCowan, III (#19699)
trey.mccowan@keanmiller.com
Pamela R. Mascari (#25162)
pam.mascari@keanmiller.com
KEAN MILLER LLP
II City Plaza
400 Convention Street, Suite 700
Post Office Box 3513 (70821)
Baton Rouge, Louisiana 70802
Telephone: (225) 387-0999
Facsimile: (225) 388-9133

Eric J. Mayer (#14184)
emayer@susmangodfrey.com
Alexandra White (#29478)
lwhite@susmangodfrey.com
SUSMAN GODFREY L.L.P.

1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

2. For Atlantic Richfield Company:

George Arceneaux, III (No. 17442)
garceneaux@liskow.com
LISKOW & LEWIS
1200 Camellia Boulevard, Suite 300
Lafayette, Louisiana 70508
Telephone: (337) 267-2332
Facsimile: (337) 267-2399

Jennifer R. Kwapisz
jennifer.kwapisz@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8383
Facsimile: (212) 836-8689

## C. Plaintiffs-Appellees

1.  Plaquemines Parish
2.  Louisiana State, ex rel. Parish of Plaquemines
3.  The State of Louisiana ex rel., Jeff Landry, Attorney General (Intervenor Plaintiff-Appellee)
4.  Louisiana Department of Natural Resources, Office of Coastal Management and its Secretary, Thomas F. Harris (Intervenor Plaintiff-Appellee)

## D. Attorneys for Plaintiffs-Appellees

1. For the Parish of Plaquemines:

Brian T. Carmouche (#30430)
bcarmouche@tcmlawfirm.net
Donald T. Carmouche (#2226)

iii

dcoffice@tcmlawfirm.net
John H. Carmouche (#22294)
jcarmouche@tcmlawfirm.net
Victor L. Marcello (#9252)
vmarcello@tcmlawfirm.net
Alfred Paul LeBlanc, Jr. (#23186)
pleblanc@tcmlawoffice.com
William R. Coenen, III (#27410)
wcoenen@tcmlawfirm.net
Todd J. Wimberley (#34862)
twimberley@tcmlawfirm.net
Ross J. Donnes (#33098)
rdonnes@tcmlawfirm.net
D. Adele Owen (#21001)
aowen@tcmlawfirm.net
Leah C. Poole (#35092)
lpoole@tcmlawfirm.net
Christopher D. Martin (#30613)
chrismartin@tcmlawfirm.net
TALBOT, CARMOUCHE & MARCELLO
17405 Perkins Road
Baton Rouge, Louisiana 70810
Telephone: (225) 400-9991
Facsimile: (225) 448-2568

Brandon J. Taylor, Esq.
btaylor@cossichlaw.com
Darren David Sumich
dsumich@cossichlaw.com
David Allen Parsiola
dparsiola@cossichlaw.com
Philip Francis Cossich , Jr.
pcossich@cossichlaw.com
COSSICH, SUMICH, PARSILOA & TAYLOR
8397 Highway 23
Belle Chasse, Louisiana 70037
Telephone: (504) 394-9000
Facsimile: (504) 394-9110

Bruce D. Burglass, Jr.

iv

bburglass@burglass.com
Andre Collins Gaudin
agaudin@burglass.com
BURGLASS TANKERSLEY GAUDIN & PHAYER
5213 Airline Drive
Metairie, Louisiana 70001
Telephone: (504) 836-2220
Facsimile: (504) 836-2221

William Peter Connick, Sr.
pconnick@connicklaw.com
CONNICK & CONNICK
3421 N. Causeway Blvd., Ste 408
Metairie, Louisiana 70002
Telephone: (504) 838-8777
Facsimile: (504) 838-9903

2. For the State of Louisiana ex rel., Elizabeth B. Murrill, Attorney General:

Ryan M. Seidmann (#28991)
LOUISIANA DEPARTMENT OF JUSTICE
1185 North 3rd Street
Baton Rouge, Louisiana 70802
Telephone: (225) 326-6085
Facsimile: (225) 326-6099

Jimmy Faircloth, Jr. (#20645)
jfaircloth@fairclothlaw.com
FAIRCLOTH MELTON BASH & GREEN
105 Yorktown Drive
Alexandria, Louisiana 71303
Telephone: (318) 619-7755

3. For the State of Louisiana, through the Louisiana Department of Energy and Natural Resources Office of Management and its Secretary, Dustin Davidson:

Jorge Benjamin Aguinaga
AguinagaJ@ag.louisiana.gov
LOUISIANA DEPARTMENT OF JUSTICE

v

1185 North 3rd Street
Baton Rouge, Louisiana 70802
Telephone: (225) 326-6085
Facsimile: (225) 326-6099

J. Blake Canfield (#30426)
blake.canfield@la.gov
Donald W. Price (#19452)
donald.price@la.gov
LOUISIANA DEPARTMENT OF NATURAL RESOURCES
Post Office Box 94396
Baton Rouge, Louisiana 70804
Telephone: (225) 342-2170
Facsimile: (225) 342-5861

## E. Entities with a Financial Interest:

The following additional persons may have a financial interest in the outcome of the litigation.

See Exhibit A.

## F. Federal Rule of Appellate Procedure 26.1:

Defendants-Appellants disclose as follows:

Chevron U.S.A. Inc. is an indirectly wholly owned subsidiary of Chevron Corporation, a publicly traded company (NYSE: CVX).

Chevron U.S.A. Holdings Inc. is an indirectly wholly owned subsidiary of Chevron Corporation, a publicly traded company (NYSE: CVX).

The Texas Company is the former name of Texaco Inc., an indirect, wholly owned subsidiary of Chevron Corporation, a publicly traded company (NYSE: CVX).

Atlantic Richfield Company is an indirect wholly-owned subsidiary of BP p.l.c., which is the only publicly-owned company in that chain of ownership.

Atlantic Richfield Company does not have any other companies, subsidiaries or affiliates that have issued shares of stock to the public.

Dated: July 14, 2026

/s/ Paul D. Clement
Paul D. Clement

CERTIFICATE OF INTERESTED PERSONS
Exhibit A

AK Steel Corporation
AK Steel Holding Corporation
AKS Investments, Inc.
Alpine Exploration Companies, Inc.
American Petrofina, Inc.
American Trading & Production Corporation
Aminoil of Louisiana, Inc.
Aminoil USA, Inc.
Anadarko Consolidated Holdings LLC
Anadarko E&P Onshore LLC
Anadarko Petroleum Corporation
Anadarko USH1 Corporation
Anderson Exploration Company, Incorporated
Anderson Operating Company, L.L.C.
Apache Oil Corporation
Apollo Global Management LLC
Armco Financial Services International, Ltd.
Atlantic Richfield Company
Baby Oil, Inc.
Badger Marine Corporation
Badger Oil Corporation
BASF Corporation
Bay Coquille, Inc.
BEPCO Genpar, L.L.C.
BEPCO, L.P.
Bevo Partners, LP
BHP Billiton Limited
BHP Billiton Petroleum (North America), Inc.
BlackRock, Inc.
BOPCO, L.P.
BOPCO, LLC
BP America Production Company

BP Products North America Inc.
Brammer Engineering, Inc.
Brammer Holdings, L.L.C.
Bridget Dinvaut, District Attorney
Callon Offshore Production, Inc.
Callon Petroleum Company
Callon Petroleum Operating Company
Cambridge Energy Corporation
Camex Operating Company
Camex, Inc.
Campbell Energy Corporation
CanadianOxy Offshore Production Co.
Canlan Oil Company
Caskids Operating Company
Castex Energy, Inc.
Cedyco Corp.
CenterPoint Energy Houston Electric, LLC
CenterPoint Energy Resources Corporation
CenterPoint Energy, Inc.
Central Resources, Inc.
Centurion Exploration Company, LLC
Century Exploration New Orleans, LLC
Chevron Corporation
Chevron U.S.A. Holdings Inc.
Chevron U.S.A. Inc.
Chevron Pipeline Co.
China National Offshore Oil Corporation
Citizens Communications Company
Clayton Williams Energy, Inc.
CNOOC Limited
Columbia Gulf Transmission, L.L.C.

Condor Petroleum Corporation
Conley P. Smith Operating Company
Conley P. Smith, L.L.C.
Continental Oil Company
Covey Energy, Inc.
Cox Operating, L.L.C.
Craig J. Sceroler, Inc.
Crimson Exploration Operating, Inc.
Cypress E&P Corporation
Davis Oil Company
Davis Petroleum Company
Davis Petroleum Corp.
Denbury Onshore, LLC
Denbury Resources Inc.
Denovo Oil & Gas, Inc.
Department of Natural Resources
Devon Energy Corporation
Devon Energy Production Company, L.P.
Devon Energy Production, L.P.
Diasu Oil & Gas Co., Inc.
Diasu Oil and Gas Company, Inc.
Dimension Energy Company, LLC
Dominion Oklahoma Texas Exploration & Production, Inc.
Dominion Resources, Inc.
Edwin L. Cox
Enable Midstream Partners, LP
Enable Oklahoma Intrastate Transmission, LLC
Endeavor Energy Resources, L.P.
Energen Corporation
Energen Resources Corporation
Energy Properties, Inc.
Energyquest II, LLC
Enertec Exploration, Inc.
EnerVest Operating, L.L.C.
EnerVest, Ltd.
EP Energy Corporation
EP Energy E&P Company, L.P.

Equitable Petroleum Corporation
Estate of William G. Helis
Exchange Oil & Gas Corporation
Expert Oil & Gas, LLC
ExxonMobil Exploration and Production South, Inc.
Exxon Mobil Corp.
ExxonMobil South Holdings, Inc.
FMP Operating Company Limited Partnership
Franks Exploration Company, L.L.C.
Frontier Communications Corporation
Gary Energy Corporation
Gas Transportation Corporation
General American Oil Company of Texas
Gerald A. Boelte
Goodrich Oil Company
Great Southern Oil & Gas Co., Inc.
Green Wilson Hicks, III
Gulf Coast Crude Oil & Gas Company, Inc.
Gulf Exploration Company, Inc.
Gulf Production Company, Inc.
Gulf South Operators, Inc.
Helis Oil & Gas Company, L.L.C.
Henry Production Company, Inc.
Hess Corporation
HHE Energy Company
Hilliard Petroleum Inc.
HK Energy, LLC
HKN, Inc.
HPC Acquisition Corporation
Hunt Consolidated Hydrocarbons, L.L.C.
Hunt Consolidated, Inc.
Hunt Oil Company
Iberia Operating Corporation
Indian Exploration, Inc.
Inexco Oil Company

ix

Janex Oil Company, Inc.
Jones Company, Ltd.
June Energy, Inc.
Kenmore Oil Co.
Kenmore Oil Co., Inc.
Kerr-McGee Worldwide Corporation
Keystone Group, L.P.
Kilroy Company of Texas, Inc.
Kinder Morgan Energy Partners, L.P.
Kinder Morgan G.P., Inc.
Kinder Morgan Operating L.P. "A"
Kinder Morgan, Inc.
King W. Lanaux
La Mesa Production Inc.
Lake Washington, Inc.
Lanoco, Inc.
Lastrada Oil & Gas Limited
Latex-Star Inc.
Leads Resources, L.L.C.
Legal Oil Company
LGS Natural Gas Company
LLOG Exploration & Production
    Company, L.L.C.
LLOG Exploration Company, L.L.C.
LLOG Holdings, L.L.C.
LMBI, L.P.
LOPCO, Inc.
Louisiana Crude Oil & Gas Company,
    Inc.
Louisiana Energy Production, L.L.C.
Louisiana Exploration & Drilling
    Company
Lyons Petroleum, Inc.
Manti Exploration Operating LLC
Mar-low Corporation
Marquee Corporation
Marsh Engineering, Inc.
McCormick Operating Company
McMoRan Exploration Company
McMoRan Oil & Gas LLC

McMoRan Production Company
Meridian Oil, Inc.
Merit Energy Company, LLC
Merit Energy Management, L.P.
Mineral Ventures, Inc.
Mobil Corporation
Mobil Exploration and Producing
North America Inc.
Mobil Oil Exploration & Producing
    Southeast, Inc.
Mosaic Global Holdings Inc.
Mosbacher Energy Company
Mosbacher U.S.A., Inc.
National Fuel Gas Company
Nazuni Partners, L.P.
NBL Permian L.L.C.
Nerco Oil & Gas, Inc.
Nexen Energy ULC
Nexen Holdings U.S.A., Inc.
Noble Energy, Inc.
Norcen Explorer, Inc.
Northcoast Oil Company
Northwest Oil Company
Occidental Oil & Gas Holding
    Corporation
Occidental Petroleum Corporation
OGE Energy Corp.
Oleum Operating Company, L.C.
O'Meara, L.L.C.
OPMI Operating Company
OXY USA Inc.
Oxy USA, Inc.
Pacific Enterprises Oil Company
Pacific Enterprises Oil Company
    (USA)
Palace Exploration Company
Palace Operating Company
Palm Energy Offshore, L.L.C.
Paxton Oil Company, LLC
PCS Phosphate Company, Inc.

Petrohawk Energy Corporation
Petro-Hunt Holdings, LLC
Petro-Hunt, L.L.C.
PetroQuest Energy, Inc.
PetroQuest Energy, L.L.C.
Phillips Oil Company
Phillips Petroleum Company
Phoenix Petro Services LLC
Pioneer Natural Resources Company
Pioneer Natural Resources USA, Inc.
Potash Corporation of Saskatchewan, Inc.
Resources Investment Corporation
RIPCO, LLC
RME Petroleum Company
Rogers Oil Company
Royal "T" Oil Co., Inc.
Sable Minerals, Inc.
Sempra Energy
Seneca Resources Corporation
Shocker Energy of Louisiana, Inc.
Shoreline Southeast LLC
SM Energy Company
Smith Production Company of Mississippi
SOI Finance Inc.
Source Petroleum, Inc.
Southport Exploration Inc.
Southwestern Energy Company
Spartan Minerals, Ltd.
SRBI, L.P.
Strata Energy, Inc.
Sun Exploration & Production Company
SWN Production Company, LLC
Talos Energy, Inc.
Talos Energy, L.L.C.
Talos Petroleum, L.L.C.
Talos Production, L.L.C.
Tennessee Gas Pipeline Company,

L.L.C.
Terry Gottberg
Texaco Inc.
The Gayden 2002 Family Trust
The Meridian Resource & Exploration LLC
The Mosaic Company
The Stone Petroleum Corporation
The Texas Company
The Williams Companies, Inc.
The Yuma Companies, Inc.
Thur Line, L.P.
Toce Energy, L.L.C.
Todd Oil Corporation of Louisiana
Total Petrochemicals & Refining USA, Inc.
TOTAL S.A. of France
Tradition Resources II, LLC
Transco Exploration Company
Turnkey Oilfield Contractors, Inc.
U.S. Oil & Gas, Inc.
U.S. Oil of Louisiana, Inc.
Union Oil Company of California
Union Pacific Resources Company
Universal Music Group, Inc.
Vintage Petroleum, LLC
Virgin Offshore, U.S.A., Inc.
VirTex Petroleum Company, L.L.P.
Vivendi Holding I LLC
Vivendi SA
Wagner Oil Company
Walter Oil & Gas Corporation
WEC Onshore, LLC
White Oak Operating Company, LLC
Whiting Oil and Gas Corporation
Whiting Petroleum Corporation
William Herbert Hunt Trust Estate
Williams Exploration Company
Williams Petroleum Services, LLC
XH, LLC

xi

xii

Xplor Energy Operating Company
XTO Energy Inc.
XTO Energy, Inc.
Yuma Energy, Inc.
Yuma Exploration and Production
   Company, Inc.
Yuma Petroleum Company

## STATEMENT REGARDING ORAL ARGUMENT

This appeal has been set for oral argument on Wednesday, August 5, 2026.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

STATEMENT REGARDING ORAL ARGUMENT ........................................... xiii

TABLE OF AUTHORITIES ................................................................................ xvi

INTRODUCTION ...................................................................................................1

JURISDICTIONAL STATEMENT ........................................................................4

STATEMENT OF THE ISSUE ...............................................................................4

STATEMENT OF THE CASE ................................................................................4

I.    Factual Background ......................................................................................4

II.   Procedural History .......................................................................................7

      A.    Plaintiffs File Dozens of Substantively Identical State-Court Petitions Alleging SLCRMA Violations by Oil and Gas Companies ........................................................................................7

      B.    Once Plaintiffs Clarify That They Are Targeting Defendants' WWII-Era Conduct, Defendants Remove Under 28 U.S.C. §1442(a), and This Court Rules That Removal Timely ........................9

      C.    This Court Rejects Defendants' Argument That the Entire Oil Industry "Acted Under" Federal Direction During WWII, but Notes That Companies With Federal Contracts Likely Satisfy That Standard ...............................................................................12

      D.    The District Court Grants Plaintiffs' Motion to Remand on the Sole Ground That Defendants Do Not Satisfy the "Relating to" Requirement, and the State-Court Case Proceeds to a Jury Verdict ...............................................................13

      E.    Meanwhile, This Court and the U.S. Supreme Court Conclusively Resolve Both the "Acting Under" and the "Relating To" Requirements in Defendants' Favor ...........................17

F.      After the Supreme Court Rejects the Sole Basis for the Decision Below, Plaintiffs Oppose Any Further Stay and Urge the State Court to Enter a Final Judgment That They Claim Will Have Preclusive Effect ....................................................20

SUMMARY OF ARGUMENT .................................................................24

STANDARD OF REVIEW ......................................................................26

ARGUMENT ..........................................................................................26

I.    Nearly Every Requirement For Federal-Officer Jurisdiction Has Already Been Conclusively Resolved In Defendants' Favor ..........................................28

      A.      This Court Has Already Held That Defendants Timely Removed This Case Within 30 Days of Being Served With an Expert Report Making Clear, for the First Time, That It Is Removable. ...................................................................28

      B.      This Court Has Already Held That Defendants "Act[ed] Under" Federal Officers in Fulfilling Government Contracts for Avgas During World War II ....................................................29

      C.      The Supreme Court Recently Held That Defendants' Challenged Production of Crude Oil During WWII "Relat[es] to" Defendants' Federally Directed Production of Avgas .................31

II.   As Every Federal Judge To Address The Issue Has Concluded, Defendants Also Satisfy The "Colorable Federal Defense" Requirement. .......34

CONCLUSION .......................................................................................42

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

xv

# TABLE OF AUTHORITIES

**Cases**

*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006)................................................................ 35, 39

*Arizona v. Manypenny*,
451 U.S. 232 (1981)......................................................................39

*Baker v. Atl. Richfield Co.*,
962 F.3d 937 (7th Cir. 2020) ......................................................26

*Bell v. Hood*,
327 U.S. 678 (1946)......................................................................39

*Bordenkircher v. Hayes*,
434 U.S. 357 (1978)......................................................................37

*Chevron USA Inc. v. Plaquemines Par.*,
146 S.Ct. 1052 (2026)............................................................ *passim*

*City of Walker v. Louisiana ex rel. Dep't of Transp. & Dev.*,
877 F.3d 563 (5th Cir. 2017) ......................................................26

*Colorado v. Symes*,
286 U.S. 510 (1932)......................................................................26

*FCC v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012)........................................................................3

*Hillman v. Maretta*,
569 U.S. 483 (2013)......................................................................35

*Humphries v. Elliott Co.*,
760 F.3d 414 (5th Cir. 2014) ......................................................26

*Jefferson Cnty. v. Acker*,
527 U.S. 423 (1999)......................................................................26

*Landgraf v. USI Film Prods.*,
511 U.S. 244 (1994)......................................................................37

*Latiolais v. Huntington Ingalls, Inc.*,
   951 F.3d 286 (5th Cir. 2020) ........................................................... 12, 34

*Mesa v. California*,
   489 U.S. 121 (1989) ..................................................................... 35, 38, 39

*New Orleans City v. Aspect Energy, L.L.C.*,
   126 F.4th 1047 (5th Cir. 2025) ............................................................ 8, 16

*Par. of Plaquemines v. Chevron USA, Inc.*,
   7 F.4th 362 (5th Cir. 2021) ................................................................ *passim*

*Par. of Plaquemines v. Riverwood Prod. Co.*,
   2022 WL 101401 (E.D. La. Jan. 11, 2022) ............................................ *passim*

*Plaquemines Par. v. BP Am. Prod. Co.*,
   103 F.4th 324 (5th Cir. 2024) .............................................................. *passim*

*Plaquemines Par. v. BP Am. Prod. Co.*,
   132 F.4th 739 (5th Cir. 2024).................................................................18

*Plaquemines Par. v. Chevron USA, Inc.*,
   2022 WL 9914869 (5th Cir. Oct. 17, 2022) .......................................... 13, 30

*Plaquemines Par. v. Chevron USA, Inc.*,
   84 F.4th 362 (5th Cir. 2023) ..................................................................15

*Savoie v. Huntington Ingalls, Inc.*,
   817 F.3d 457 (5th Cir. 2016) ............................................................... 26, 27

*Solar Energy Indus. Ass'n v. FERC*,
   154 F.4th 863 (D.C. Cir. 2025) ...............................................................31

*Watson v. Philip Morris Cos.*,
   551 U.S. 142 (2007)........................................................................... 30, 40

*Winters v. Diamond Shamrock Chem. Co.*,
   149 F.3d 387 (5th Cir. 1998).................................................................40

*Zeringue v. Crane Co.*,
   846 F.3d 785 (5th Cir. 2017).............................................................. 25, 35

**Constitutional Provision**

U.S. Const. art. III, §2 ...................................................................35

**Statutes**

16 U.S.C. §§1451-1465 ....................................................................8

28 U.S.C. §1442(a) ................................................. 4, 11, 14, 31

28 U.S.C. §1446(b) ........................................................................1

28 U.S.C. §1447(d) ........................................................................4

La. Rev. Stat. §§49:214.21-42 ........................................................8

La. Rev. Stat. §49:214.30(A)(1) ......................................................8

La. Rev. Stat. §49:214.34(C)(2)................................................. 8, 37

La. Rev. Stat. §49:214.36(E) ..........................................................8

**Rules and Regulations**

Fed. R. App. P. 8(a)(2) .................................................................22

6 Fed. Reg. 5880 (Nov. 19, 1941)................................................36

7 Fed. Reg. 41 (Jan. 1, 1942) ........................................................5

7 Fed. Reg. 5142 (July 7, 1942)...................................................36

8 Fed. Reg. 12,571 (Sept. 14, 1943) ............................................36

**Other Authorities**

Jack Brook, *Chevron Ordered to Pay More Than $740 Million to Restore
    Louisiana Coast in Landmark Trial*, Associated Press (Apr. 4, 2025),
    https://perma.cc/5SRM-TUPX .................................................17

Exec. Order No. 9276, 7 Fed. Reg. 10091 (Dec. 4, 1942)........................................5

Greg LaRose, *Supreme Court Rules Plaquemines Coastal Lawsuit
    Against Chevron Belongs in Federal Court*, La. Illuminator
    (Apr. 17, 2026), https://archive.ph/bjcrB........................................20

Alex Lubben, *Louisiana Wants Oil Firms to Pay for Coastal Damage. A Supreme Court Ruling Just Made That Harder.*, nola.com (Apr. 19, 2026), https://archive.ph/LFtsp ........................................................21

Motion for an Order Scheduling Hearing on Defendants' Motion for Entry of Final Judgment, *Par. of Plaquemines v. Rozel Operating Co.*, No. 60-996 (La. Jud. Dist. Ct. July 8, 2025) ......................................................23

Notice of Recent Development Relating to Federal Jurisdiction, *Par. of Plaquemines v. Rozel Operating Co.*, No. 60-996 (La. Jud. Dist. Ct. Mar. 3, 2025)........................................................................18

Op., *Plaquemines Par. v. BP Am. Prod. Co.*, No. 23-30294 (5th Cir. May 22, 2026) ........................................................................20

Order, *Plaquemines Par. v. BP Am. Prod. Co.*, No. 23-30294 (5th Cir. May 26, 2023) ........................................................................17

Original Br. of Plaintiff-Appellee and Intervenor Plaintiffs-Appellees, *Par. of Cameron v. BP Am. Prod. Co.*, No. 23-30422 (5th Cir. Oct. 5, 2023)........................................................................38

Original Br. of Plaintiff-Appellee and Intervenors-Appellees, *Plaquemines Par. v. BP Am. Prod. Co.*, No. 23-30294 (5th Cir. Aug. 10, 2023)........................................................... 38, 39, 40

Nick Paschal, *$744M Louisiana Damage Decision Against Chevron in Jeopardy After Supreme Court Ruling*, Yahoo! News (Apr. 20, 2026), https://tinyurl.com/6bjvc3rp ........................................................20

Pet. App., *Chevron USA Inc. v. Plaquemines Par.*, No. 24-813 (U.S. Jan. 29, 2025) ........................................................33

Reply in Supp. of Pet. for Writ of Cert., *Chevron USA Inc. v. Plaquemines Par.*, No. 24-813 (U.S. May 13, 2025) ......................................19

Resp. Br. for Louisiana, *Chevron USA Inc. v. Plaquemines Par.*, No. 24-813 (U.S. Nov. 13, 2025) ........................................................40

Response of Appellees to Appellants' Motion Regarding Further Proceedings, *St. Bernard Parish v. Chevron U.S.A. Holdings, Inc.*, No. 24-30745 (5th Cir. June 22, 2026)..........................................................33

Response of the Parish of Plaquemines to the Opposition to Plaintiffs'
    Motion for an Order Scheduling Hearing on Defendants' Motion for
    Entry of Final Judgment, *Par. of Plaquemines v. Rozel Operating Co.*,
    No. 60-996 (La. Jud. Dist. Ct. July 10, 2025) ......................................................23

## INTRODUCTION

The Supreme Court's recent decision in *Chevron USA Inc. v. Plaquemines Parish*, 146 S.Ct. 1052 (2026), unanimously rejected the sole basis for the district court's remand order in this case. The district court held that Defendants' "charged conduct," i.e., allegedly unlawful oil-production practices, does not "bear[] any relationship" to Defendants' refining of aviation gasoline ("avgas") under federal contracts during World War II ("WWII"). ROA.36333-34. Considering the exact same question in a materially identical case, the Supreme Court reached the opposite conclusion: It held that there is "a close relationship" between Defendants' challenged "production of crude oil" and their "wartime avgas refining" under federal contracts. *Chevron*, 146 S.Ct. at 1061; *accord id.* at 1063 (Jackson, J., concurring in the judgment). In light of that unanimous ruling, any attempt to defend the holding (or reasoning) of the decision below would be futile.

Nor is there any plausible argument for affirming the decision below on alternate grounds. Besides the "relating to" requirement (definitively resolved in favor of federal jurisdiction by *Chevron*), a removing defendant must establish that its notice of removal was timely, *see* 28 U.S.C. §1446(b); that it is "the United States, a federal agency, a federal officer, or a person 'acting under' a federal officer," *Chevron*, 146 S.Ct. at 1057; and that it has "a colorable federal defense," *id.* at 1057-58. The first two of those three requirements are not at issue here because this Court

has already resolved them in favor of federal jurisdiction in materially indistinguishable cases. In *Parish of Plaquemines v. Chevron USA, Inc.* (*Plaquemines I*), this Court held that Defendants' "removal based on federal-officer jurisdiction was timely" because it occurred less than 30 days after Plaintiffs served an expert report *in this very case* that "revealed a new theory of liability"—and grounds for federal-officer removal—"for the first time." 7 F.4th 362, 365 (5th Cir. 2021). And in the consolidated appeals that ultimately went up to the Supreme Court as *Chevron*, a panel of this Court unanimously concluded that Defendants "'act[ed] under' a federal officer" because they "were federal contractors that refined a product—100-octane aviation gasoline …—that the government needed to fight in World War II." *Plaquemines Par. v. BP Am. Prod. Co.* (*Plaquemines IV*), 103 F.4th 324, 335 (5th Cir. 2024).

Consequently, the only remaining question is whether Defendants have raised a "colorable federal defense" to Plaintiffs' claims, and the answer is plainly yes. Although the panel majority in *Plaquemines IV* did not reach this issue, Judge Oldham addressed it in his separate opinion and concluded that it is "clearly" satisfied. *Id.* at 356 (Oldham, J., dissenting). Plaintiffs claim that Louisiana law (during WWII) required Defendants to build "overland roads" to their oil-production facilities, instead of dredging canals, and to use "steel tanks," rather than earthen pits, at the heads of oil wells. *Id.* at 336 (majority op.). If that is true, "then it may

2

have been impossible to comply with both" federal law and Louisiana law, as the federal government severely restricted the use of asphalt and steel during WWII. *Id.* at 356 (Oldham, J., dissenting). Furthermore, adopting Plaintiffs' preferred production methods, e.g., using directional drilling instead of vertical drilling, "would have slowed [Defendants'] production rates during World War II," *id.* at 337 (majority op.), frustrating the federal government's goal of dramatically increasing oil production during WWII. On top of that, Plaintiffs' attempt to use a 1978 statute to penalize Defendants for conduct and alleged harms during 1940s raises serious due process concerns. *See, e.g.*, *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) ("A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required."). Defendants have thus asserted "at least two" federal defenses—preemption and due process—that are unquestionably "colorable." *Par. of Plaquemines v. Riverwood Prod. Co.*, 2022 WL 101401, at *6-7 (E.D. La. Jan. 11, 2022). Indeed, every federal judge to reach the question has found the colorable-federal-defense requirement satisfied.

In short, the Supreme Court's recent decision in *Chevron* and two prior decisions of this Court leave Plaintiffs with no plausible argument against federal-officer removal. This case should never have moved forward in state court. Nonetheless, the state trial court appears poised to enter final judgment on a $744

3

million jury verdict at a hearing scheduled for September 3, 2026—even though *Chevron* makes clear that the case was properly removed to federal court more than three years ago. Accordingly, Defendants respectfully request that this Court resolve the appeal in favor of federal jurisdiction and issue its ruling no later than September 2. Entry of final judgment could complicate efforts to adjudicate this case in federal court going forward, and so an expeditious ruling from this Court is necessary to vindicate Defendants' right to a federal forum, where their federal defenses may be fairly heard and resolved.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction because Defendants timely removed this case on May 23, 2018, and the case satisfies the requirements for federal-officer removal under 28 U.S.C. §1442(a). This Court has jurisdiction over Defendants' timely appeal of the district court's order remanding this case to state court. *See* 28 U.S.C. §1447(d); ROA.36326-37.

## STATEMENT OF THE ISSUE

Whether Defendants properly removed this case to federal court under the federal-officer removal statute, 28 U.S.C. §1442(a).

## STATEMENT OF THE CASE

### I.    Factual Background

World War II was, "from beginning to end, … a war of oil." ROA.31696. As one Brigadier General explained, our Nation's armed forces were "so totally

dependent on the products of petroleum that the success of land, sea and air operations c[ould] be said to depend on their availability." ROA.31697. Accordingly, the federal government called on U.S. oil companies—including Chevron's WWII-era predecessor The Texas Company—to supply the U.S. military with "vastly enlarged and vital supplies of oil and oil derivatives." ROA.31699 (emphasis omitted); *see also Chevron*, 146 S.Ct. at 1058 n.1 ("All agree that as Chevron's corporate predecessor, the Texas Company's acts were Chevron's acts for the purposes of this case.").

The President established a temporary agency, the Petroleum Administration for War ("PAW"), to spearhead that effort by "overs[eeing] the entire oil industry, from production to transportation to refinement." *Id.* at 1058; *see* Exec. Order No. 9276, 7 Fed. Reg. 10091 (Dec. 4, 1942). Among many other duties, PAW was tasked with negotiating contracts for specialized petroleum products that the government needed for the war effort. One especially important product was avgas, especially 100-octane avgas, "a 'superfuel' for combat aircraft that helped to produce 'more speed, more power, and quicker take-off.'" *Chevron*, 146 S.Ct. at 1058. "Within two weeks after the attack on Pearl Harbor, [PAW] issued a directive for 'the production of 100 octane aviation gasoline to be greatly increased.'" *Id.* (quoting 7 Fed. Reg. 41 (1942)). The message was clear: "[F]orget economic

5

considerations—forget everything except getting out more and more 100-octane avgas as quickly as you can." *Id.*

Heeding this call, The Texas Company entered into hundreds of contracts to furnish the federal government with avgas and other specialized petroleum products needed to fight and win the war. ROA.31743. In March 1942, for example, The Texas Company entered into a federal contract in which it "agreed to work 'day and night' to quadruple [the] avgas refining capacity" at its refinery in Port Arthur, Texas. *Chevron*, 146 S.Ct. at 1058; *see* ROA.34247-66. Under that contract, the federal government committed to purchase at least 5,900 barrels of 100-octane avgas from the Port Arthur refinery once an initial expansion was completed, and at least 12,775 barrels per day from that refinery once a further expansion was completed. ROA.34249. By the end of the war, The Texas Company's Port Arthur refinery was refining 21,500 barrels of 100-octane avgas per day. ROA.31743-45. All told, it produced over 16 million barrels of avgas during WWII. ROA.31745.

To achieve the massive increases in refined avgas required by its government contracts, The Texas Company needed ever-increasing amounts of crude oil. As a vertically integrated company that both produced crude oil and refined it into petroleum products, The Texas Company naturally looked to its own production sources—including oil wells in a part of Plaquemines Parish, Louisiana known as the Delacroix Island Field. From 1942 through 1945, The Texas Company produced

approximately 673,000 barrels of crude oil in the Delacroix Island Field—more than quadrupling its production during that period from approximately 52,500 barrels per year to 284,000 barrels per year to meet the voracious federal demand for avgas. ROA.31741.  "[M]ost (if not all) of the crude produced during this time from the Delacroix Island Field was transported to the Port Arthur refinery," where it was refined into avgas and other wartime petroleum products under contracts with the federal government.  ROA.31742.  The Texas Company thus used large quantities of crude oil that it produced in the Delacroix Island Field to fulfill its wartime avgas contracts with the federal government.

## II.    Procedural History

### A.    Plaintiffs File Dozens of Substantively Identical State-Court Petitions Alleging SLCRMA Violations by Oil and Gas Companies.

This case is one of 42 closely related cases filed in Louisiana state courts by various Louisiana coastal parishes seeking to hold oil and gas companies—including Defendants—liable for exploration, production, and transportation activities conducted in Louisiana's coastal zone since the 1930s.  *See* ROA.36326-27.  The State of Louisiana and its Department of Energy and Natural Resources have intervened in support of the parishes.  Each of these closely related lawsuits challenges Defendants' activities in a different "[o]perational [a]rea"—geographical boundaries invented by Plaintiffs for the sole purpose of the lawsuits.  *See* ROA.36327.  Plaintiffs allege that Defendants violated the permitting requirements

of Louisiana's State and Local Coastal Resources Management Act ("SLCRMA"), La. Rev. Stat. §§49:214.21-42, a law enacted in 1978 so Louisiana could establish a coastal management plan that would receive federal funding under the Coastal Zone Management Act of 1972, 16 U.S.C. §§1451-1465. *See* ROA.36327. Plaintiffs' allegations are based in substantial part on actions that occurred decades before that statute was enacted. *See, e.g.*, ROA.79-102.

SLCRMA established a brand-new permitting program that took effect in 1980, declaring that "[n]o person shall commence a use … without first … receiving a coastal use permit." La. Rev. Stat. §49:214.30(A)(1). SLCRMA also created a new cause of action authorizing courts to impose civil liability, assess damages, and order certain restoration "for uses conducted within the coastal zone without a coastal use permit where a … permit is required or which are not in accordance with the terms and conditions of a coastal use permit." *Id.* §49:214.36(E). SLCRMA contains a grandfather clause that underscores the novel and prospective-only nature of the law, providing that "uses legally commenced or established prior to the effective date of the coastal use permit program shall not require a coastal use permit." *Id.* §49:214.34(C)(2); *see New Orleans City v. Aspect Energy, L.L.C.*, 126 F.4th 1047, 1052 (5th Cir. 2025) (rejecting SLCRMA claim over a company's allegedly negligent operation of pipeline canals because the company "acquired or constructed

8

[those] canals before SLCRMA's effective date" and so was "excepted from the statute's permitting requirements").

Notwithstanding that "grandfather clause," in an effort to maximize their recovery, Plaintiffs have advanced the chronology-defying theory that Defendants should have obtained permits after SLCRMA was adopted for oil and gas activities that commenced long before SLCRMA took effect, on the theory that "most, if not all, of Defendants' operations or activities complained of [in the petitions] were not 'lawfully commenced or established' prior to the implementation of the coastal zone management program." ROA.36459. But Plaintiffs' state-court petitions provide no details about this theory. Each petition contains a single, boilerplate paragraph asserting that "[t]he complained-of operations and activities were prohibited prior to 1978 by various provisions of Louisiana Statewide Orders 29, 29-A, and 29-B, various field wide orders, as well as various orders of the Louisiana Stream Control Commission." *E.g.*, ROA.36459.

**B.     Once Plaintiffs Clarify That They Are Targeting Defendants' WWII-Era Conduct, Defendants Remove Under 28 U.S.C. §1442(a), and This Court Rules That Removal Timely.**

Years after filing their lawsuits, Plaquemines Parish filled that gap in the petitions by serving an expert report in this very case ("Report"), accompanied by a signed statement indicating that it represented the position of the Louisiana Department of Natural Resources for purposes of all 42 related cases. ROA.228.

9

This Report contained previously undisclosed information about *how* and *why* Plaintiffs are attempting to impose SLCRMA liability on Defendants for pre-SLCRMA conduct, including their WWII-era production of crude oil in Louisiana. The Report identified, for the first time, specific activities of The Texas Company in Delacroix Island Field—long predating the enactment of SLCRMA—that Plaintiffs allege were "against industry knowledge and prudent practices," were done in "Bad Faith," and "therefore could not have been lawfully commenced" within the meaning of SLCRMA.  ROA.147.

For example, the Report alleges that The Texas Company acted imprudently and in "bad faith" during WWII by "excessive[ly]" dredging canals to access the Delacroix Island Field, instead of building "roads with open drainage pathways." ROA.205; *see* ROA.161-62; ROA.206-08.  The Report asserts that The Texas Company violated Louisiana law by not using steel tanks and steel-intensive saltwater injection wells at its facilities in the Delacroix Field during WWII, on the theory that this went "against industry knowledge and prudent practices."  ROA.147; *see* ROA.97; ROA.161-62; ROA.205-06; ROA.214.  The Report also accuses The Texas Company of extracting too much oil from the Delacroix Island field with too much haste, criticizing it for using vertical drilling rather than directional drilling and asserting that "the 24/7 nature of [its] operations… generated accelerated wave action that erodes levees and destroys marshes."  ROA.90; ROA.205 (asserting that

The Texas Company should have adopted "directional drilling" and other "alternative" practices "in the early 1940s" that would have "reduced production rates"); *see also* ROA.161-62; ROA.208-13.

After being served with the Report, Defendants promptly removed this case to federal court under the federal-officer removal statute, 28 U.S.C. §1442(a). *See* ROA.26-27. The Notice of Removal explains that the Report "revealed for the first time in this litigation" that Plaintiffs' claims "implicate wartime and national emergency activities that certain Defendants undertook at the direction of federal officers" and raise "questions of federal law." ROA.27. Dozens of other related cases were likewise removed shortly after Plaintiffs' issuance of the Report. Plaintiffs moved to remand all the cases to state court, arguing (*inter alia*) that the removal was untimely, *see, e.g.*, ROA.8592-8600, and their remand motions were litigated in two lead cases (one from the Eastern District of Louisiana and one from the Western District of Louisiana). Both district courts ordered remand.

The lead cases were consolidated on appeal, and this Court vacated both remand orders. *Plaquemines I*, 7 F.4th at 367. The Court held that the removal was timely because the "vague citations to Louisiana regulations" in Plaintiffs' state-court petitions did not affirmatively reveal any grounds for federal-officer removal, and, once those grounds were made clear in the Report, Defendants removed to federal court within the statutory deadline. *Id.* at 368-72. But *Plaquemines I*

11

declined to address the merits of Defendants' arguments for federal-officer removal.

The Court instead remanded the cases for the district courts to reconsider the merits

in light of its then-recent decision in *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d

286, 290 (5th Cir. 2020) (en banc), which altered the test for federal-officer removal.

*See* 7 F.4th at 365.

> **C.** **This Court Rejects Defendants' Argument That the Entire Oil Industry "Acted Under" Federal Direction During WWII, but Notes That Companies With Federal Contracts Likely Satisfy That Standard.**

On remand, several merits issues were litigated in *Parish of Plaquemines v.*

*Riverwood Production Co.*, No. 18-5217 (E.D. La.). There, the "crucial" issue was

"whether defendants 'acted pursuant to a federal officer's directions,'" as §1442(a)

requires. 2022 WL 101401, at *7. The defendants argued that they satisfied this

requirement for three different reasons: (1) "they were federal contractors";

(2) "they were federal subcontractors"; and (3) irrespective of any contract, WWII

was a unique period when all parties engaged in the petroleum industry acted under

the direction of PAW. *Id.* The district court found insufficient record evidence that

the relevant defendant in *Riverwood* (namely, Humble Oil) was a federal contractor

or subcontractor during the war, and held that the defendants could not satisfy the

"acting under" requirement based on their unique wartime relationship with PAW. *Id.* at *7-9.[1]

This Court affirmed, accepting the district court's conclusion that the defendants failed to show they were federal contractors or subcontractors and could not satisfy the "acting under" requirement based on their unique wartime relationship with PAW. *See Plaquemines Par. v. Chevron USA, Inc.* (*Plaquemines II*), 2022 WL 9914869, at *2-4 (5th Cir. Oct. 17, 2022). The Court made clear, however, that its holding did not imply that *none* of the 42 related cases were removable. To the contrary, the Court explained that "refineries, who *had* federal contracts and acted pursuant to those contracts, *can* likely remove under §1442." *Id.* at *4 (emphasis added).

### D. The District Court Grants Plaintiffs' Motion to Remand on the Sole Ground That Defendants Do Not Satisfy the "Relating to" Requirement, and the State-Court Case Proceeds to a Jury Verdict.

After this Court issued its mandate in *Plaquemines II*, Plaintiffs renewed their motion to remand this case to state court. Defendants opposed, explaining that this case is not controlled by *Plaquemines II*—and indeed, presents the precise scenario in which *Plaquemines II* recognized that removal *would* be appropriate. Defendants

---

[1] Humble Oil did operate its own refinery (which had a federal contract to supply the federal government with avgas), but the *Riverwood* defendants did not rely on that contract due to insufficient evidence that crude from the relevant part of Louisiana was sent to that refinery. *See Riverwood*, 2022 WL 101401, at *7 n.14.

13

explained that they satisfy the "acting under" requirement here because, during WWII, The Texas Company "produced 100- and 91-octane avgas, among other essential wartime refined petroleum products, to federal-government specifications under its federal contracts." ROA.31665. Defendants further explained that The Texas Company's allegedly unlawful conduct in the Delacroix Island Field during WWII—specifically, dredging of access canals (instead of building overland roads), use of earthen pits at well heads (rather than steel tanks), use of vertical drilling (instead of directional drilling), lack of saltwater injection wells, and high oil-production rates—is sufficiently "relat[ed] to" an "act under color of [federal] office," 28 U.S.C. §1442(a), because the Texas Company used much of the crude it produced in that field to fulfill its federal avgas contracts. *See* ROA.31671-76.

The district court nevertheless granted Plaintiffs' motion to remand on May 10, 2023. Plaintiffs argued that this case is controlled by *Plaquemines II*, but the court did not accept that argument; it "assume[d], without holding," that Defendants satisfy the acting-under requirement "because they contracted with the government to refine crude oil" during WWII. ROA.36333 n.48. The court's decision instead turned on the "relating to" requirement. It held that Defendants have not "shown that the charged conduct—[their] oil production during [WWII]—bears any relationship to [The Texas Company's] federal contract[s] to refine aviation fuel." ROA.36333-34. Defendants immediately appealed the district court's order

14

granting remand, along with similar remand orders entered by other district courts in related cases.

The district court initially stayed its order pending appeal, explaining that a stay would promote "judicial economy" "[b]ecause a decision from the Fifth Circuit reversing the remand order would moot any state court proceedings." ROA.36432. In a closely related case, however, this Court held that a stay was inappropriate. The Court concluded that Defendants did not show "a strong likelihood of success" on the merits of their argument that "the oil production activities at issue in this and closely related lawsuits" are sufficiently "related to" their federally directed refining activities. *Plaquemines Par. v. Chevron USA, Inc.* (*Plaquemines III*), 84 F.4th 362, 373-75 (5th Cir. 2023). The Court further held that Defendants had not shown that they would likely suffer irreparable injury if forced to litigate in state court while they appealed the remand order in federal court, deeming it "implausible" that "state-court proceedings will reach finality" before the appeal is resolved. *Id.* at 376. In light of that decision, the district court lifted the stay of its remand order (as did all other district courts that had issued analogous stays).

In early 2024, the state court resumed its proceedings in this case. The case quickly proceeded through discovery and extensive motions practice, and, in March 2025, was tried before a Plaquemines Parish jury.

15

That trial was riddled with prejudicial errors. For one thing, the state court permitted Plaintiffs to pursue a theory of liability that contravened SLCRMA's plain text, despite this Court's emphatic rejection of that theory in a related case brought by the City of New Orleans. *See New Orleans*, 126 F.4th at 1053. For another, the state court allowed Plaintiffs to hold Defendants liable for failing to properly remediate the area after the cessation of oil and gas operations, but prevented Defendants from showing the jury that it had transferred many of its operations to another company that later ceased operations and remediated the area pursuant to a plan approved by the State. Making matters worse, the state court excluded crucial evidence, including testimony and guidance from officials at the state agency charged with enforcing and implementing SLCRMA stating the statute does *not* require coastal use permits for operations commenced before its enactment. This evidence demonstrated Chevron's compliance with regulatory expectations and was central to Chevron's fair notice, good faith, and causation defenses. To top it all off, the Court granted Plaintiffs' motions for a directed verdict on these defenses, finding that Chevron failed to present any evidence supporting them at trial.

As a result of the state court's erroneous rulings, the jury was presented with a one-sided view of the case. Plaintiffs were allowed to (mis)characterize Chevron's conduct as unlawful and unduly profit-driven without disclosing that Chevron did not obtain permits because it reasonably relied on decades' worth of official

16

guidance.    At the close of trial, Plaintiffs urged the jury—over Chevron's objection—to deliver a verdict based not on the law or the facts, but on loyalty to Plaquemines Parish, rising insurance costs and costs to taxpayers, and opposition to "big oil."  Plaintiffs' lead attorney even told the jurors that he would not see a dollar from their verdict because it all would go to the Parish, giving them the (patently false) impression that counsel for the parishes would not benefit financially from these long-running lawsuits against the oil industry.

Led astray by the state court's many errors, the jury returned a verdict for Plaintiffs on April 4, 2025, awarding $744.6 million in damages.[2]

**E.    Meanwhile, This Court and the U.S. Supreme Court Conclusively Resolve Both the "Acting Under" and the "Relating To" Requirements in Defendants' Favor.**

Meanwhile, this Court heard appeals from the remand orders in two lead cases, while holding in abeyance the appeals from the remand orders in several other related cases (including this case).  *See* Order, *Plaquemines Par. v. BP Am. Prod. Co.*, No. 23-30294 (5th Cir. May 26, 2023), Dkt.61.  The panel unanimously held that as federal contractors, the companies "satisfy the 'acting under' requirement" for federal-officer jurisdiction. *Plaquemines IV*, 103 F.4th at 335.  But a two-judge majority determined that Defendants did not satisfy the "relating to" requirement

---

[2] *See* Jack Brook, *Chevron Ordered to Pay More Than $740 Million to Restore Louisiana Coast in Landmark Trial*, Associated Press (Apr. 4, 2025), https://perma.cc/5SRM-TUPX.

because, in its view, The Texas Company's challenged WWII-era production activities were "unrelated" to its WWII-era federal refining contracts. *Id.* at 343. Judge Oldham dissented, explaining that "the charged conduct—defendants' petroleum exploration and production activities—clearly 'related to' an 'act under color of federal office,'" i.e., their "contractually specified refining activities." *Id.* at 348 (Oldham, J. dissenting) (footnote omitted). The court denied rehearing en banc by a vote of 7-6. *Plaquemines Par. v. BP Am. Prod. Co.*, 132 F.4th 739 (5th Cir. 2024) (per curiam).

Defendants filed a petition for a writ of certiorari on January 29, 2025—less than six weeks before the state-court trial in this case was set to commence. Plaintiffs initially waived their right to respond, but, on February 21, the Supreme Court called for a response. Defendants immediately notified the state court of that development, telling the court that it "may wish to consider whether to proceed with the scheduled five-week trial (and its demands on judicial and party resources and on a Parish jury) as scheduled … given the possibility that the Supreme Court will determine that this case was properly removed to federal court in the first instance and the proceedings this Court will be rendered a nullity."[3]  Undeterred, the state court moved forward

---

[3] Notice of Recent Development Relating to Federal Jurisdiction, *Par. of Plaquemines v. Rozel Operating Co.*, No. 60-996 (La. Jud. Dist. Ct. Mar. 3, 2025).

with trial, which yielded the $744.6 million jury award, an award that figured prominently in petitioners' cert-stage reply brief urging Supreme Court review.[4]

On June 16, 2025, the Supreme Court granted a writ of certiorari, agreeing to review this Court's divided decision in *Plaquemines IV*. Although the grant of certiorari came several weeks after the conclusion of the state-court trial, the state court had not yet entered final judgment because of a dispute over whether the already massive judgment should be augmented to include prejudgment interest. In light of the Supreme Court's decision to take the case, Plaintiffs agreed that further state-court proceedings in this case should be stayed, and the state court entered a consent order granting a stay until 30 days after issuance of the Supreme Court's decision.

On April 17, 2026, the Supreme Court unanimously ruled in favor of the removing defendants, holding that "Chevron's wartime production of crude oil 'relat[es] to' Chevron's wartime aviation-gasoline refining for the military" and "fits comfortably within the ordinary meaning" of the federal-officer removal statute. *Chevron*, 146 S.Ct. at 1057, 1061. The Supreme Court therefore vacated this Court's judgment affirming the remand orders and returned the consolidated lead cases to this Court for "further proceedings consistent with this opinion." *Id.* at 1063.

---

[4] *See* Reply in Supp. of Pet. for Writ of Cert. at 11-12 & n.1, *Chevron*, No. 24-813 (U.S. May 13, 2025).

**F.**      **After the Supreme Court Rejects the Sole Basis for the Decision Below, Plaintiffs Oppose Any Further Stay and Urge the State Court to Enter a Final Judgment That They Claim Will Have Preclusive Effect.**

On May 22, 2026, this Court sua sponte remanded the lead cases to their respective district courts.  Op., *Plaquemines Par. v. BP Am. Prod. Co.*, No. 23-30294 (5th Cir. May 22, 2026), Dkt.287 (per curiam).  A few days later, this Court notified the parties in this case that the case would remain in abeyance until June 10, 2026, *see* Dkt.87.  Because the Supreme Court in *Chevron* unanimously rejected the sole basis of the district court's remand order, one might have expected Plaintiffs to acknowledge that this case was properly removed to federal court. And, immediately after *Chevron* was handed down, Plaintiffs' counsel did just that:  One of the lead attorneys for Plaquemines Parish told the press that, in light of *Chevron*, "11 cases" involving companies that both produced crude oil and refined it into avgas during WWII—including this case—"require decisions by a federal court."[5]  He further described the Supreme Court as "hav[ing] decided" that the "jury of Plaquemines

---

[5] Greg LaRose, *Supreme Court Rules Plaquemines Coastal Lawsuit Against Chevron Belongs in Federal Court*, La. Illuminator (Apr. 17, 2026), https://archive.ph/bjcrB; *see also* Nick Paschal, *$744M Louisiana Damage Decision Against Chevron in Jeopardy After Supreme Court Ruling*, Yahoo! News (Apr. 20, 2026), https://tinyurl.com/6bjvc3rp (Plaintiffs' counsel:  "[C]hanging where the case will be heard, *as has happened*, will not deter our efforts." (emphasis added).

20

Parish residents" who found Chevron liable for $744 million "did not have the right to make th[at] decision."[6]

Despite these candid public admissions about the import of *Chevron*, Plaintiffs have now reversed their position and are continuing to dispute whether this case is removable. Even more remarkably, despite previously agreeing to stay the state-court proceedings in this case pending resolution of *Chevron*, Plaintiffs changed course once they received an adverse decision in *Chevron*. Specifically, Plaintiffs indicated that they would oppose any further stay of the state-court proceedings beyond May 28, 2026, and have instead urged the state court to expeditiously enter a three-quarter-billion final judgment—even though *Plaquemines IV* and *Chevron* demonstrate that the case was properly removed several years ago and should never have proceeded in state court at all.

To prevent that outcome, Defendants filed an emergency motion in this Court on May 27, 2026, seeking a stay of the remand order. Dkt.92. The next day, the motions panel entered an administrative stay. Dkt.111.

Two weeks later, the panel denied Defendants' stay motion because Defendants "did not first move in the district court," as Federal Rule of Appellate Procedure 8(a) generally requires. Dkt.125. That order also extended the

---

[6] Alex Lubben, *Louisiana Wants Oil Firms to Pay for Coastal Damage. A Supreme Court Ruling Just Made That Harder.*, nola.com (Apr. 19, 2026), https://archive.ph/LFtsp.

21

administrative stay by an additional 14 days, giving Defendants time to seek a stay from the district court. Dkt.125.

The very next day (June 12), Applicants moved the district court to stay its remand order and requested a decision on that motion by June 23. D.Ct.Dkt.96, 97. The district court never acted on that motion. On June 24, Applicants filed a second emergency motion seeking a stay from this Court, explaining that the district court had "failed to afford the relief requested." Dkt.143; *see* Fed. R. App. P. 8(a)(2)(A)(ii). On June 25, the motions panel issued a per curiam order denying Defendants' motion without stating a rationale. Dkt.161.

While these stay motions were being processed, the parties also submitted competing proposals for further proceedings in this appeal. *See* Dkt.123; Dkt.137. Among other things, Defendants suggested that the Court should summarily reverse the remand order, in light of *Chevron*, or vacate it before remanding for further proceedings. *See* Dkt.123 at 2-5. After Defendants' motion for a stay was denied, Defendants filed a reply brief in support of their motion regarding further proceedings in which they explained that they were prepared to seek emergency relief from the Supreme Court on July 7, 2026, in the absence of some action by this Court, to ensure that the state court does not proceed to enter final judgment on a $744.6 million verdict in a case that plainly belongs in federal court. Dkt.163 at 3.

22

On July 6, 2026, this Court issued a short order expediting the appeal "to the next available oral argument panel." Dkt.178. Shortly thereafter, the Court entered a highly expedited briefing schedule and scheduled oral argument for August 5.

Defendants' counsel promptly contacted Plaintiffs' counsel to ask whether Plaintiffs would agree to stay the state-court proceedings while the Court resolves this appeal on an expedited basis. Again, Plaintiffs refused. Instead, on July 8, Plaintiffs filed a motion asking the state court to schedule a hearing regarding entry of final judgment—*without even mentioning* that this Court had just expedited the present appeal.[7] On July 9, Defendants filed their opposition. On July 10, Plaintiffs filed another brief urging the state court to "sign a final judgment in this case as expeditiously as possible," asserting that a "*final* state court judgment[] would not be affected by a successful appeal of a remand order."[8]

The state court has now scheduled a hearing regarding entry of final judgment for September 3, 2026. To safeguard Defendants' right to a federal forum, and to ensure that a three-quarter-billion dollar jury verdict is not reduced to a final

---

[7] Motion for an Order Scheduling Hearing on Defendants' Motion for Entry of Final Judgment, *Par. of Plaquemines v. Rozel Operating Co.*, No. 60-996 (La. Jud. Dist. Ct. July 8, 2025).

[8] Response of the Parish of Plaquemines to the Opposition to Plaintiffs' Motion for an Order Scheduling Hearing on Defendants' Motion for Entry of Final Judgment, *Par. of Plaquemines v. Rozel Operating Co.*, No. 60-996 (La. Jud. Dist. Ct. July 10, 2025).

23

judgment in direct contravention of the clear import of the Supreme Court's unanimous ruling in *Chevron*, Defendants respectfully ask this Court to resolve the present appeal no later than September 2, 2026.

## SUMMARY OF ARGUMENT

Prior appellate decisions in this long-running litigation have conclusively resolved nearly all of the requirements for federal-officer removal in Defendants' favor. In August 2021, this Court held that Defendants timely removed Plaintiffs' SLCRMA cases within 30 days of receipt of an expert report in this case that revealed, for the first time, that the cases are removable under 28 U.S.C. §1442(a). *Plaquemines I*, 7 F.4th at 368-73. Plaintiffs therefore did not dispute timeliness in their March 2023 motion to remand; the decision below does not address it; and Plaintiffs cannot raise it in this appeal (and it is foreclosed by *Plaquemines I* in all events). In May 2024, this Court held that Defendants satisfy the first of §1442(a)'s three requirements—the "acting under" requirement—by virtue of their federal contracts to supply the U.S. military with avgas during WWII. *Plaquemines IV*, 103 F.4th at 335; *accord id.* at 345 (Oldham, J., dissenting). Upon review, the Supreme Court took that holding as a given and expressly endorsed the panel's rejection of Plaintiffs' "acting under" argument. *See Chevron*, 146 S.Ct. at 1060 n.2, 1063. The Supreme Court also resolved §1442's second requirement in Defendants' favor, holding that materially indistinguishable SLCRMA claims challenging "Chevron's

24

wartime production of crude oil" are sufficiently "'relat[ed] to' Chevron's wartime refining of crude oil into avgas for the military." *Id.* at 1060.

In light of these prior rulings, the only open issue is whether Defendants have satisfied the third and final requirement for federal-officer removal—"the assertion of a colorable federal defense." *Zeringue v. Crane Co.*, 846 F.3d 785, 790 (5th Cir. 2017), *overruled on other grounds by Latiolais*, 951 F.3d 286. Defendants have asserted at least two federal defenses that clear that undemanding hurdle with room to spare. First, to the extent SLCRMA required Chevron to build overland roads (instead of dredging canals), use steel tanks at well heads (instead of earthen pits), and use steel to install saltwater injection wells in the Delacroix Island field during WWII, those obligations are preempted by the federal government's wartime regulations restricting the use of asphalt and steel. Indeed, Plaintiffs' legal theory suggests that "it may have been impossible to comply with both the federal directives and Louisiana law." *Plaquemines IV*, 103 F.4th at 356 (Oldham, J., dissenting). "That is clearly enough to raise a colorable federal defense." *Id.* In addition, Plaintiffs' effort to punish Chevron's WWII-era conduct under a state law that was not enacted until 1980 violates the Due Process Clause, as Chevron did not receive fair notice (during WWII) that it could incur liability unless it adopted Plaintiffs' preferred methods of production. *See Riverwood*, 2022 WL 101401, at *7 (concluding that this is also a "viable" federal defense).

This Court should hold that Defendants have satisfied all requirements for federal-officer removal and reverse the district court's remand order.

## STANDARD OF REVIEW

The district court's remand order is reviewed *de novo*. *Plaquemines I*, 7 F.4th at 367-68.

## ARGUMENT

Federal-officer removal is "unlike other removal doctrines: it is not narrow or limited." *City of Walker v. Louisiana ex rel. Dep't of Transp. & Dev.*, 877 F.3d 563, 569 (5th Cir. 2017). On the contrary, 28 U.S.C. §1442(a) must be "liberally construed to give full effect" to the federal interest in ensuring a federal forum for challenges to acts by federal officers and those under their direction. *Colorado v. Symes*, 286 U.S. 510, 517 (1932); *accord Humphries v. Elliott Co.*, 760 F.3d 414, 417 (5th Cir. 2014). For that reason, federal-officer removal is assessed "without a thumb on the remand side of the scale." *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 462 (5th Cir. 2016), *overruled on other grounds by Latiolais*, 951 F.3d 286. The Court must "credit [Defendants'] theory of the case," *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999); accept Defendants' "plausible factual allegations" as true, *Chevron*, 146 S.Ct. at 1061; and give Defendants "the benefit of all reasonable inferences from the facts alleged," *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 941, 945 (7th Cir. 2020).

26

Under 28 U.S.C. §1446(b)(3), a notice of removal is timely if filed "within 30 days after the receipt by the defendant" of a copy of a "paper" making it "unequivocally clear and certain" that the case is removable. *Plaquemines I*, 7 F.4th at 368. Beyond timeliness, §1442(a) requires a removing defendant to "satisfy three requirements." *Chevron*, 146 S.Ct. at 1057-58. First, as relevant here, the defendant must be "a person 'acting under' a federal officer, such as certain private parties hired to assist federal officers." *Id.* Second, "the suit must be 'for or relating to any act under color of such office.'" *Id.* And third, the "defendant must assert 'a colorable federal defense.'" *Id.* If any claim against any defendant satisfies the standard for federal-officer removal, the entire case is removable. *See, e.g.*, *Savoie*, 817 F.3d at 463.

Here, Chevron readily satisfies each requirement. Indeed, this Court has already resolved both timeliness and the "acting under" element in its favor. *See Plaquemines I*, 7 F.4th at 368-73; *Plaquemines IV*, 103 F.4th at 333-35. The Supreme Court's recent decision in *Chevron* resolved the "relating to" element in Chevron's favor. *See* 146 S.Ct. at 1060-62. That leaves only the "colorable federal defense" element, and, as Judge Oldham cogently explained in his separate opinion in *Plaquemines IV*, Chevron has "clearly" raised at least one colorable federal defense. 103 F.4th at 356 (Oldham, J., dissenting); *accord Riverwood*, 2022 WL 101401, at *6-7. Indeed, every federal judge to reach the issue has held that

27

defendants in these cases have raised colorable federal defenses. Simply put, Plaintiffs no longer have any plausible objections to federal-officer removal.

I.     **Nearly Every Requirement For Federal-Officer Jurisdiction Has Already Been Conclusively Resolved In Defendants' Favor.**

    A.     **This Court Has Already Held That Defendants Timely Removed This Case Within 30 Days of Being Served With an Expert Report Making Clear, for the First Time, That It Is Removable.**

As discussed, all 42 of Plaintiffs' closely related and artificially subdivided SLCRMA cases were removed under 28 U.S.C. §1442(a) in May 2018, shortly after Plaintiffs served an expert report in this case that finally revealed their theories of liability based on pre-SLCRMA conduct. *See supra* pp.9-11. In June 2018, Plaintiffs moved to remand this case—and all the related cases—on the ground that removal was untimely, *see* ROA.8592-8600. The question of timeliness was litigated in two lead cases and presented to this Court in consolidated appeals. *See Plaquemines I*, 7 F.4th at 365.

This Court held that removal was timely under 28 U.S.C. §1446(b)(3). As the Court observed, Plaintiffs' state-court petitions contained "vague citations to Louisiana regulations covering numerous aspects of oil production," but failed to identify the "specific conduct that [Plaintiffs] alleged was unlawful." *Plaquemines I*, 7 F.4th at 371. Because of this lack of specificity, the petitions "did not affirmatively reveal grounds for federal-officer removal" under this Court's then-applicable precedents, and thus did not "start[] the removal clock." *Id.* at 371-72.

28

Plaintiffs' April 30, 2018 expert report in this case "revealed" that information "for the first time," *id.* at 373, and, consistent with §1446(b)(3), all 42 related cases were removed within 30 days of receiving that report, *see, e.g.*, ROA.27-28.  The Court thus concluded that "removal on federal-officer grounds was timely." *Plaquemines I*, 7 F.4th at 373.

*Plaquemines I*'s holding on timeliness unquestionably controls this case. Effectively conceding as much, Plaintiffs did not dispute timeliness when they renewed their motion for remand in March 2023.  *See* ROA.31469-80.  The district court accordingly did not address it in the decision below, *see* ROA.36326-37, and so it is not preserved for purposes of this appeal.  Regardless, *Plaquemines I* is circuit precedent that definitively rejects any timeliness objection and supports federal jurisdiction.

**B.     This Court Has Already Held That Defendants "Act[ed] Under" Federal Officers in Fulfilling Government Contracts for Avgas During World War II.**

This Court has likewise resolved the "acting under" requirement in Defendants' favor.  Before the district court, Defendants argued that The Texas Company "'acted under' federal officers" during WWII "because it was a federal contractor" that "produced 100-octane avgas for the military" at its refinery in Port Arthur, Texas, under "detailed specifications set by the federal government." ROA.31665; *see* ROA.36332-33.  Defendants (and others) made the exact same

argument in several of the related cases. As with timeliness, the issue was litigated in two lead cases and presented to this Court in consolidated appeals. *See Plaquemines IV*, 103 F.4th at 328-29.

This Court held that The Texas Company "satisf[ies] the 'acting under' requirement" by virtue of its WWII-era contracts to supply the federal government with 100-octane avgas. *Id.* at 335; *accord id.* at 345 (Oldham, J., dissenting). As the Court explained, "[a] private party 'working under a federal contract to produce an item the government needed' is the 'archetypal case' of a defendant 'acting under' a federal officer." *Id*. at 334 & n.48 (collecting cases); *see also Watson v. Philip Morris Cos*., 551 U.S. 142, 148 (2007). During WWII, The Texas Company had just that type of "acting under" relationship: It was a "federal contractor[] that refined a product—100-octane aviation gasoline ('avgas')—that the government needed to fight" (and win) the war. *Plaquemines IV*, 103 F.4th at 335; *see also Plaquemines II*, 2022 WL 9914869, at *2, *4 (5th Cir. Oct. 17, 2022) (noting that acting-under relationships "are often evidenced by governmental contracts" and that "refineries[] who had federal contracts" would likely satisfy the acting-under requirement).

When the consolidated appeals in *Plaquemines IV* went up to the Supreme Court, "[n]o party dispute[d]" that The Texas Company had "'acted under' a federal officer when it refined crude oil into avgas for the military pursuant to a federal contract," and the Supreme Court "assume[d], without deciding, that it did."

30

*Chevron*, 146 S.Ct. at 1060 n.2. What is more, the Supreme Court expressly endorsed the *Plaquemines IV* panel's unanimous rejection of Plaintiffs' acting-under argument. *Id.* at 1063 ("As the Fifth Circuit explained, Louisiana's interpretation 'impermissibly conflates the "distinct" "acting under" and "connected or associated with" elements of the federal officer removal test.'" (quoting *Plaquemines IV*, 103 F.4th at 335)). This Court should decline any invitation to revisit *Plaquemines IV*'s unanimous (and eminently correct) conclusion that, during WWII, Chevron "had the necessary relationship with the government to satisfy the 'acting under' requirement," 103 F.4th at 335. *Cf. Solar Energy Indus. Ass'n v. FERC*, 154 F.4th 863, 872 (D.C. Cir. 2025) ("When the Supreme Court vacates a judgment of this court without addressing the merits of a particular holding in the panel opinion, that holding 'continues to have precedential weight, and in the absence of contrary authority, we do not disturb' it.").

## C. The Supreme Court Recently Held That Defendants' Challenged Production of Crude Oil During WWII "Relat[es] to" Defendants' Federally Directed Production of Avgas.

The next requirement for removal—that the suit must be "for or relating to any act under color of [a federal] office," 28 U.S.C. §1442(a)—is controlled by the Supreme Court's recent decision in *Chevron*. The decision below rested entirely on this element. The district court "assume[d]" (and this Court later confirmed in *Plaquemines IV*) that The Texas Company "acted under a federal officer's directive

31

because [it] contracted with the government to refine crude oil" during WWII. ROA.36333 n.48.  The district court nevertheless found removal improper on the ground that The Texas Company's "oil production during [that] time period" lacked a sufficient "relationship to the federal contract to refine aviation fuel."  ROA.36334. That is exactly what the panel majority held in *Plaquemines IV*.  *See* 103 F.4th at 341 ("[T]he relationship between Defendants' oil production and refinement activities was insufficient to satisfy" §1442(a)).  What is more, both the panel majority in *Plaquemines IV* and the district court in this case concluded that Defendants needed to show that The Texas Company's "refining contracts" contained an explicit "federal directive pertaining to [its] oil production activities." *Id.* at 345; *accord* ROA.36335-37.

In *Chevron*, the Supreme Court unanimously repudiated these holdings.  *See* 146 S.Ct. at 1063; *accord id.* (Jackson, J., concurring in the judgment).  The Court explained that "[t]he phrase 'relating to' sweeps broadly," connoting a "connection" or "association" between two things.  *Id.* at 1060 (majority op.).  And the Court held that "Chevron's case fits comfortably within the ordinary meaning of a suit 'relating to' the performance of federal duties" because there was a "close relationship" between Chevron's challenged oil-production activities and "the performance of its federal duties."  *Id.* at 1061.  The Court also specifically rejected the panel majority's view (shared by the district court here) that Chevron could not satisfy the "relating

to" requirement unless its federal refining contract "expressly direct[ed] or invite[d] Chevron's crude-oil production." *Id.* at 1062.

*Chevron* unquestionably resolves the "relating to" requirement in this case. As Plaintiffs have elsewhere conceded,[9] the facts of this case are materially identical to those the Supreme Court considered in *Chevron*. Indeed, this case involves *the very same federal contract* that the Supreme Court analyzed in *Chevron*. *Compare* Pet. App.150-81, *Chevron*, No. 24-813 (U.S. Jan. 29, 2025), *with* ROA.34247-66. Just as in *Chevron*, Plaintiffs' theory of liability in this case "implicate[s] Chevron's wartime efforts to produce and supply avgas' essential feedstock." *Chevron*, 146 S.Ct. at 1061. Just as in *Chevron*, the connection between production and refining is apparent on the face of Chevron's federal contracts, under which "the Government paid more for avgas when the price of obtaining crude oil increased." *Id.* at 1062; *see* ROA.32125-26. Just as in *Chevron*, "[m]uch of the crude oil that Chevron produced in the [relevant] field was ultimately used for its own avgas refining." 146 S.Ct. at 1061; *see* ROA.31672; ROA.31741-45. And, just as in *Chevron*, Plaintiffs challenge specific oil-production methods "that allowed it to increase its production of crude oil in the [relevant] field during wartime," including "its reliance on

---

[9] *See* Response of Appellees to Appellants' Motion Regarding Further Proceedings at 1, 3-6, *St. Bernard Parish v. Chevron U.S.A. Holdings, Inc.*, No. 24-30745 (5th Cir. June 22, 2026), Dkt.61 (expressly acknowledging that this case is on all fours with *Chevron* because in each case, "at least one defendant refined the crude it produced during WWII in the 'operational area' defined in the complaint").

vertical-drilling methods, canals, and earthen pits." 146 S.Ct. at 1061. The only difference is that the allegations in *Chevron* concerned the Delta Duck Club field, while here they concern the Delacroix Island field. *Compare* 146 S.Ct. at 1061-62, *with* ROA.36448. That difference is wholly immaterial. Indeed, the Supreme Court relied on the expert report produced *in this case*, which contains allegations about the Delacroix Island field, to show that the "relating to" requirement was satisfied in *Chevron*. *See* 146 S.Ct. at 1059, 1061.

In short, *Chevron* makes clear beyond cavil that this case "fits comfortably within the ordinary meaning of a suit 'relating to' the performance of federal duties." *Id.* at 1061. Plaintiffs have no basis for re-litigating an issue definitively resolved against them by the Supreme Court.

## II. As Every Federal Judge To Address The Issue Has Concluded, Defendants Also Satisfy The "Colorable Federal Defense" Requirement.

The only element of the test for federal-officer removal that has not yet been conclusively resolved in Defendants' favor by this Court or the Supreme Court is the requirement to "assert 'a colorable federal defense.'" *Chevron*, 146 S.Ct. at 1057-58. That is not a demanding requirement, *Latiolais*, 951 F.3d at 297, and Defendants readily satisfy it. Indeed, it is not a close question. Although the panel majority in *Plaquemines IV* did not reach the "colorable federal defense" issue, Judge Oldham did and concluded that Defendants' preemption defense is "clearly" colorable. 103 F.4th at 356 (Oldham, J., dissenting). And the only district court to reach this issue

(in a related case) likewise concluded that Defendants have raised "at least two" colorable federal defenses, namely, preemption and due process. *Riverwood*, 2022 WL 101401, at \*6-7. This Court should reach the same conclusion.

As Judge Oldham explained, "the colorable federal defense requirement does not come from the text of §1442." *Plaquemines IV*, 103 F.4th at 354 (Oldham, J., dissenting). "Instead, it derives from Article III," *id.*, which gives federal courts jurisdiction over "all Cases … arising under th[e] Constitution" or "the Laws of the United States," U.S. Const. art. III, §2. To avoid possible "constitutional problems," the Supreme Court has long construed "all the various incarnations of the federal officer removal statute to require the averment of a colorable federal defense." *Mesa v. California*, 489 U.S. 121, 133-34, 136-37 (1989). The Court has made clear, however, that the asserted defense "needs only to be 'colorable,'" which is not a high bar. *Zeringue*, 846 F.3d at 790 & n.12. The defense cannot be "immaterial and made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous." *Id.*; *see Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 n.10 (2006).

Defendants' preemption defense is far more than just colorable; it is meritorious. Federal law preempts state law when (1) "compliance with both federal and state regulations is impossible" or (2) "the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Hillman v. Maretta*, 569 U.S. 483, 490 (2013). This case implicates both principles.

35

Plaintiffs allege that some of Defendants' WWII-era oil-production activities in the Delacroix Island field violated Louisiana law. For example, they claim that Defendants were obligated to build overland roads rather than canals. *See Chevron*, 146 S.Ct. at 1059, 1061; ROA.90; ROA.161-62; ROA.205-08. But a contemporaneous federal regulation commanded that "no asphalt" be used for the "paving, surfacing or resurfacing" of "any roadway" absent government approval. 7 Fed. Reg. 5142, 5142 (July 7, 1942); *see also* 8 Fed. Reg. 12,571, 12,571 (Sept. 14, 1943) (prohibiting use of road oil for paving). Plaintiffs further contend that Defendants' oil wells should have used steel tanks rather than earthen pits at well heads and used steel to install saltwater reinjection wells. *See Chevron*, 146 S.Ct. at 1059, 1061; ROA.90-91; ROA.147; ROA.161; ROA.205-06. But the federal government discouraged the use of steel containers to "the greatest possible degree" during WWII, given the "urgent" "needs of the defense program." 6 Fed. Reg. 5880, 5880 (Nov. 19, 1941). Accordingly, if Defendants' challenged practices actually "violated Louisiana law," as Plaintiffs suggest, "then it may have been impossible to comply with both the federal directives and Louisiana law." *Plaquemines IV*, 103 F.4th at 356 (Oldham, J., dissenting).

What is more, Plaintiffs take issue with "the 24/7 nature" of Defendants' WWII-era operations, and suggest that The Texas Company should have adopted "alternative" practices "in the early 1940[]s" that would have "reduced production

36

rates." ROA.90; ROA.205; *see Plaquemines IV*, 103 F.4th at 337 (majority op.). But if Louisiana law required Defendants to slow their extraction of crude, it plainly would have frustrated the federal government's effort to maximize the production of avgas. These arguments are "clearly enough" to state "a colorable federal defense." *Id*. at 356 (Oldham, J., dissenting); *accord Riverwood*, 2022 WL 101401, at *6.

Defendants also have strong due process defenses. When SLCRMA took effect in 1980, Defendants did not receive fair notice that they needed to obtain permits for operations commenced decades earlier (including during WWII). Louisiana officials instead told the oil and gas industry—consistent with the plain text of SLCRMA's "grandfather clause," La. Rev. Stat. §49:214.34(C)(2), and the basic nature of a permitting regime—that permits were required only for *new* operations. Moreover, back in the 1940s, Defendants received absolutely no notice that they could incur liability by dredging canals and using earthen pits, much less that they were required to use directional drilling and install saltwater injection wells. Defendants' production of crude oil during WWII was entirely lawful at the time, and punishing a defendant for conduct that was lawful when it occurred is "a due process violation of the most basic sort." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). Relatedly, a "presumption against retroactive legislation is deeply rooted" in the Due Process Clause. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). Any way one slices it, the Due Process Clause does not permit Louisiana to punish

37

pre-1980 conduct, including Defendants' production activities during WWII, under a permitting statute that did not take effect until 1980.  As the *Riverwood* court correctly concluded, Defendants likely have "a viable due process" defense to Plaintiffs' chronology-defying theory of liability.  2022 WL 101401, at *7.

Notably, in their *Plaquemines IV* briefing, Plaintiffs did not dispute that Defendants' preemption and due process defenses are (at the very least) colorable. They instead proposed an additional limitation, asserting that §1442(a) requires a federal defense "*arising out of* [the defendant's] *official duties*."[10]

Neither the Supreme Court nor this Court has ever recognized such a limitation, and Judge Oldham declined Plaintiffs' invitation to do so.  *See Plaquemines IV*, 103 F.4th at 355-56 (Oldham, J., dissenting).  That is because any such nexus requirement is baseless.  The colorable-federal-defense is an atextual requirement that is superimposed on the §1442(a) only to avoid any concerns about satisfying the minimum requirements of Article III.  As the Supreme Court explained in *Mesa*, the federal-officer removal statute "merely serves to overcome the 'well-pleaded complaint' rule" and does not "independently support Art. III 'arising under' jurisdiction."  489 U.S. at 136.  "[T]he raising of a federal question" in a removal

---

[10] Original Br. of Plaintiff-Appellee and Intervenors-Appellees at 47, *Plaquemines Par. v. BP Am. Prod. Co.*, No. 23-30294 (5th Cir. Aug. 10, 2023), Dkt.86 (bold text omitted) (hereinafter "*Plaquemines IV* Resp."); Original Br. of Plaintiff-Appellee and Intervenor Plaintiffs-Appellees at 47, *Par. of Cameron v. BP Am. Prod. Co.*, No. 23-30422 (5th Cir. Oct. 5, 2023), Dkt.84.

petition satisfies Article III, and any colorable federal defense can serve that purpose. *Id.*; *cf. Arbaugh*, 546 U.S. at 501 (2006) (noting that under *Bell v. Hood*, 327 U.S. 678 (1946), a plaintiff need only plead "a colorable claim 'arising under' the Federal Constitution or laws" to satisfy 28 U.S.C. §1331); *Bell*, 327 U.S. at 682-83 (requiring only a claim that is not "wholly insubstantial and frivolous"). Neither the Constitution nor the statute requires the federal issue to arise out of the defendants' official duties. Thus, Defendants' colorable preemption and due-process defenses suffice to establish federal jurisdiction without regard to whether they arise out of their federal contractual duties. *Accord Plaquemines IV*, 103 F.4th at 348, 356 (Oldham, J., dissenting).

Plaintiffs have sought support for their contrary view in *Arizona v. Manypenny*, which states that "[h]istorically, removal under §1442(a)(1) and its predecessor statutes was meant to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties." 451 U.S. 232, 241 (1981). *See Plaquemines IV* Resp.47 nn.139, 140. That statement merely describes the statutes' historical purpose—not an additional limitation on federal-officer removal, let alone a requirement that would survive the 2011 amendments to the removal statute. In that regard, the chronology is important. When *Manypenny* was decided in 1981 (and at all times up until 2011), a removing party's federal defense practically always arose out of his official duties—not by virtue of some

39

requirement that only a subset of colorable federal defenses counted, but because §1442(a) required "a causal nexus" between the defendants' challenged conduct and "defendants' actions under color of federal office." *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998). As amended in 2011, however, the statute "contemplates removal of suits against officers or their agents for acts that were *not* done under color of their offices, so long as the suits 'relat[e] to' such acts." *Chevron*, 146 S.Ct. at 1063 (emphasis added).

Accepting Plaintiffs' contention that any colorable federal defense must "arise out of" an "act[] under color of federal office," *Plaquemines IV* Resp.47, by which they mean the duties imposed directly by the federal contract, would essentially nullify the 2011 amendment by reinstating the causal-nexus requirement as part of the colorable-federal-defense element. Indeed, in *Chevron*, the Supreme Court rejected Plaintiffs' similar attempt to resurrect a causal-nexus requirement as part of the "acting under" element. While Plaintiffs' current argument relies on dictum from *Manypenny*, their prior argument relied on dictum from another pre-2011 Supreme Court decision, namely *Watson*.[11] The Supreme Court made short shrift of that effort to impose a junior-varsity nexus requirement that survived Congress' decision to add

---

[11] *See* Resp. Br. for Louisiana at 23-24, *Chevron*, No. 24-813 (U.S. Nov. 13, 2025) (citing *Watson*, 551 U.S. at 147, for the proposition that §1442(a) "permits removal only if the defendant, in carrying out the 'acts' that are the subject of the plaintiff's complaint, was 'acting under' any 'agency' or 'officer' of 'the United States.'").

40

the words "related to" the statute in 2011.  The Court explained that any such effort would ignore Congress' actions to broaden the statute and would violate the canon against superfluity by "leav[ing] the 'relating to' requirement with little, if any, independent function."  *Chevron*, 146 S.Ct. at 1063.  Plaintiffs' attempt to smuggle a nexus requirement into the "colorable federal defense" prong fails for the same reasons.

Moreover, even if (contrary to fact and law) there were some requirement that the colorable federal defense have some degree of connection to the actions under federal contract that satisfy the other prongs of the test, the requirement would be satisfied here.  One of the Supreme Court's central conclusions in *Chevron* was that "Chevron's wartime crude-oil production was closely connected to its wartime avgas refining."  *Id.* at 1060.  Thus, to the extent that Defendants' colorable federal preemption defense addresses conflicting state and federal rules for crude production rather than conflicting state and federal rules for avgas refining, that is utterly beside the point.  Indeed, the one Justice who viewed §1442(a) as imposing a causal-nexus requirement concluded that "Chevron satisfies the causal-nexus requirement on the facts presented here."  *Id.* at 1063 (Jackson, J., concurring).  To the extent Plaintiffs are insisting that there is an even more demanding nexus test lurking in the atextual colorable-federal-defense requirement than the textual "related-to" element, that

41

argument fails for all the reasons the Supreme Court rejected Plaintiffs' effort to impose a nexus component on the "acting under" requirement.

In sum, the only issue left for this Court to determine in this appeal is whether Defendants have raised a colorable federal defense. As Judge Oldham concluded in *Plaquemines IV*, they clearly have. Accordingly, Defendants have satisfied all requirements for federal-officer removal.

## CONCLUSION

This Court should reverse the decision below and remand with instructions that the case proceed in federal court. Defendants respectfully request that this Court issue that ruling no later than September 2, 2026, because (absent prompt action by this Court) the state court appears poised to enter final judgment on September 3.

Dated: July 14, 2026

Respectfully submitted,

s/ Paul D. Clement

GEORGE ARCENEAUX III
LISKOW & LEWIS
1200 Camellia Boulevard, Suite 300
Lafayette, LA 70508

JENNIFER R. KWAPISZ
ARNOLD & PORTER KAYE
  SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710

***Counsel for Atlantic Richfield
Company***

PAUL D. CLEMENT
    *Counsel of Record*
C. HARKER RHODES IV
JOSEPH J. DEMOTT
ILAN J. POSNER
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

JENNIFER J. CLARK
SIDLEY AUSTIN LLP
1501 K Street, NW

42

Washington, DC 20005

STEVEN PAUL LEHOTSKY
LEHOTSKY COHN LLP
200 Massachusetts Ave. NW, Suite 700
Washington, DC 20001

ALEXANDRA WHITE
ERIC J. MAYER
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002

CHARLES S. MCCOWAN III
PAMELA R. MASCARI
KEAN MILLER LLP
II City Plaza
400 Convention St., Suite 700
Post Office Box 3513 (70821)
Baton Rouge, LA 70802

MICHAEL R. PHILLIPS
CLAIRE E. JUNEAU
KEAN MILLER LLP
909 Poydras Street, Suite 3600
New Orleans, LA 70112

***Counsel for Chevron U.S.A. Inc.,
Chevron U.S.A. Holdings Inc., and
The Texas Company***

**CERTIFICATE OF COMPLIANCE**

I certify that:

1) This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 9,865 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32.2.

2) This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

3) Any required privacy redactions have been made pursuant to Circuit Rule 25.2.13, the electronic submission is an exact copy of the paper submission, and the brief has been scanned for viruses using Windows Defender and is free of viruses.

July 14, 2026

s/Paul D. Clement<br>
Paul D. Clement

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system.  I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/Paul D. Clement
Paul D. Clement
