No. 23-30336

_____

## UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

_____

PLAQUEMINES PARISH,

*Plaintiff-Appellee,*

LOUISIANA STATE, EX REL. ELIZABETH B. MURRILL; LOUISIANA STATE, THROUGH LOUISIANA DEPARTMENT OF NATURAL RESOURCES, OFFICE OF MANAGEMENT, DUSTIN DAVIDSON, SECRETARY,

*Intervenor Plaintiffs-Appellees,*

v.

CHEVRON USA HOLDINGS, INCORPORATED, NAMED AS SUCCESSOR IN INTEREST TO TEXACO E & P, INCORPORATED AND TEXACO, INCORPORATED; CHEVRON USA, INCORPORATED, NAMED AS SUCCESSOR IN INTEREST TO THE CALIFORNIA COMPANY; TEXAS COMPANY; ATLANTIC RICHFIELD COMPANY, NAMED AS SUCCESSOR IN INTEREST TO ARCO OIL AND GAS COMPANY DIVISION OF ATLANTIC RICHFIELD COMPANY,

*Defendants-Appellants.*

_____

On appeal from the United States District Court for the
Eastern District of Louisiana (Barbier, J.)
No. 2:18-cv-05189

---

## REPLY BRIEF FOR DEFENDANTS-APPELLANTS

---

COUNSEL LISTED ON INSIDE COVER

GEORGE ARCENEAUX III
LISKOW & LEWIS
1200 Camellia Boulevard, Suite 300
Lafayette, LA 70508

JENNIFER R. KWAPISZ
ARNOLD & PORTER KAYE
  SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710

**Counsel for Atlantic Richfield
Company**

PAUL D. CLEMENT
  *Counsel of Record*
C. HARKER RHODES IV
JOSEPH J. DEMOTT
ILAN J. POSNER
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

JENNIFER J. CLARK
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005

STEVEN P. LEHOTSKY
LEHOTSKY COHN LLP
200 Massachusetts Ave. NW, Suite 700
Washington, DC 20001

ALEXANDRA WHITE
ERIC J. MAYER
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002

CHARLES S. MCCOWAN III
PAMELA R. MASCARI
KEAN MILLER LLP
II City Plaza
400 Convention St., Suite 700
Post Office Box 3513 (70821)
Baton Rouge, LA 70802

MICHAEL R. PHILLIPS
CLAIRE E. JUNEAU
KEAN MILLER LLP
909 Poydras Street, Suite 3600
New Orleans, LA 70112

**Counsel for Chevron U.S.A. Inc.,
Chevron U.S.A. Holdings Inc., and
The Texas Company**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................. iii

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 3

I.     Plaintiffs' Procedural Arguments Are Meritless. ........................................ 3

II.    Defendants Satisfy The Requirements For Federal-Officer Removal. ......... 9

     A.    Defendants "Act[ed] Under" Federal Officers in Fulfilling
           Government Contracts for Avgas During World War II. .................... 9

     B.    Defendants' Production of Crude Oil During WWII "Relat[es] to"
           Their Federally Directed Refining Activities................................. 13

     C.    Defendants Satisfy the "Colorable Federal Defense" Requirement.. 15

III.    The Post-Removal State Proceedings Have No Effect............................. 24

CONCLUSION ................................................................................................. 28

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Abraham Watkins Nichols Agosto Aziz & Stogner v. Festeryga*,
155 F.4th 456 (5th Cir. 2025)...................................................................... 4, 5

*Allman v. Hanley*,
302 F.2d 559 (5th Cir. 1962).......................................................................... 8

*Bordenkircher v. Hayes*,
434 U.S. 357 (1978)...................................................................................... 22

*Bunol v. George Engine Co.*,
996 F.2d 67 (5th Cir. 1993)........................................................................... 24

*Butler v. Coast Elec. Power Ass'n*,
926 F.3d 190 (5th Cir. 2019)......................................................................... 23

*Chevron USA Inc. v. Plaquemines Par.*,
146 S.Ct. 1052 (2026) .........................................................................*passim*

*City of Oakland v. BP PLC*,
2023 WL 8179286 (9th Cir. Nov. 27, 2023)................................................. 6

*Def. Distributed v. Platkin*,
55 F.4th 486 (5th Cir. 2022)................................................................... 25, 26

*Fed. Sav. & Loan Ins. Corp. v. Griffin*,
935 F.2d 691 (5th Cir. 1991)......................................................................... 19

*Forty Six Hundred LLC v. Cadence Educ., LLC*,
15 F.4th 70 (1st Cir. 2021) ........................................................................... 27

*Fosdick v. Dunwoody*,
420 F.2d 1140 (1st Cir. 1970)......................................................................... 5

*Hinojosa v. Perez*,
214 F.Supp.2d 703 (S.D. Tex. 2002).............................................................. 8

*In re Ala. & Dunlavy, Ltd.*,
983 F.3d 766 (5th Cir. 2020)......................................................................... 25

*In re Allstate Ins. Co.*,
8 F.3d 219 (5th Cir. 1993) ........................................................................ 7

*In re Digicon Marine, Inc.*,
966 F.2d 158 (5th Cir. 1992) ................................................................ 7, 22

*In re Southmark Corp.*,
163 F.3d 925 (5th Cir. 1999) .................................................................... 6

*Jefferson Cnty. v. Acker*,
527 U.S. 423 (1999) ................................................................................ 21

*Landgraf v. USI Film Prods.*,
511 U.S. 244 (1994) ................................................................................ 23

*Latiolais v. Huntington Ingalls, Inc.*,
951 F.3d 286 (5th Cir. 2020) .................................................................. 13

*Manguno v. Prudential Prop. & Cas. Ins. Co.*,
276 F.3d 720 (5th Cir. 2002) .................................................................. 19

*Merck Sharp & Dohme Corp. v. Albrecht*,
587 U.S. 299 (2019) ................................................................................ 20

*Mesa v. California*,
489 U.S. 121 (1989) .......................................................................... 17, 18

*Monsanto Co. v. Durnell*,
2026 WL 1825691 (U.S. June 25, 2026) ................................................ 21

*New Orleans City v. Aspect Energy, L.L.C.*,
126 F.4th 1047 (5th Cir. 2025) ................................................................. 2

*Par. of Plaquemines v. Riverwood Prod. Co.*,
2022 WL 101401 (E.D. La. Jan. 11, 2022) .................................... 1, 15, 19

*Plaquemines Par. v. BP Am. Prod. Co.*,
103 F.4th 324 (5th Cir. 2024) ............................................................*passim*

*Plaquemines Par. v. Chevron USA, Inc.*,
2022 WL 9914869 (5th Cir. Oct. 17, 2022) ........................................ 8, 10

*Plaquemines Par. v. Chevron USA, Inc.*,
   84 F.4th 362 (5th Cir. 2023) ................................................................. 4

*Santee v. Oceaneering Int'l, Inc.*,
   95 F.4th 917 (5th Cir. 2024) ........................................................... 7, 23

*St. Charles Surgical Hosp., L.L.C. v. Louisiana Health Serv. & Indem.
   Co.*, 935 F.3d 352 (5th Cir. 2019) ...................................................... 13

*Sun v. TETRA Techs., Inc.*,
   2023 WL 6892227 (5th Cir. Oct. 19, 2023) ......................................... 22

*United States v. Stauffer Chem. Co.*,
   464 U.S. 165 (1984) ............................................................................. 6

*Webster v. Kijakazi*,
   19 F.4th 715 (5th Cir. 2021) .......................................................... 10, 13

*Wood v. Crane Co.*,
   764 F.3d 316 (4th Cir. 2014) ................................................................ 9

*Zeringue v. Crane Co.*,
   846 F.3d 785 (5th Cir. 2017) .............................................................. 23

**Statutes**

28 U.S.C. §1442 ................................................................. 8, 16, 17

28 U.S.C. §1442(a) ................................................................. 8, 17

28 U.S.C. §1442(a)(1) .................................................................. 18

28 U.S.C. §1446(a) .................................................................. 7, 22

28 U.S.C. §1446(d) ........................................................................ 26

28 U.S.C. §1447(c) ........................................................................ 26

28 U.S.C. §1447(d) .................................................................. 26, 27

28 U.S.C. §1653 ............................................................................. 9

**Other Authorities**

14C Fed. Prac. & Proc. (4th ed. 2026)................................................ 25

159 A.L.R. Fed. 377 (2000) ........................................................... 5

Br. for Defendants-Appellants, *Plaquemines IV*,
    103 F.4th 324 (5th Cir. Sept. 5, 2023) ........................................ 12

Br. for Plaintiffs-Appellees, *Plaquemines IV*,
    103 F.4th 324 (5th Cir. Aug. 10, 2023) ....................................... 12

Br. for U.S., *Chevron*,
    146 S.Ct. 1052 (U.S. Sept. 11, 2025)......................................... 11

Chevron's Pre-Trial Conference Statement, *Par. of Plaquemines v. Rozel Operating Co.*, No. 60-996 (La. Jud. Dist. Ct. Jan. 31, 2025) ....................... 20

**INTRODUCTION**

Plaintiffs' briefs serve only to confirm that this case belongs in federal court. This Court has already unanimously held that Defendants were "acting under" a federal officer in refining crude oil under federal contracts to provide the aviation gasoline ("avgas") that the federal government needed to win World War II ("WWII"). *Plaquemines Par. v. BP Am. Prod. Co.*, 103 F.4th 324, 334-35 (5th Cir. 2024) ("*Plaquemines IV*"), *vacated on other grounds sub nom. Chevron USA Inc. v. Plaquemines Par.*, 146 S.Ct. 1052 (2026). The Supreme Court has already unanimously held that the claims at issue here "relat[e] to" Defendants' acts under federal direction. *Chevron*, 146 S.Ct. at 1060-63. And every judge to consider the issue has agreed that Defendants have one or more colorable federal defenses. *Plaquemines IV*, 103 F.4th at 356 (Oldham, J., dissenting); *Par. of Plaquemines v. Riverwood Prod. Co.*, 2022 WL 101401, at *6-7 (E.D. La. Jan. 11, 2022). Those decisions underscore that this case was properly removed to federal court.

Given that every relevant factor supports federal jurisdiction, Plaintiffs are reduced to raising a host of baseless objections, most of which are squarely foreclosed by Supreme Court or Circuit precedent and all of which are meritless. Defendants did not waive their right to a federal forum by participating in the state-court proceedings against their will after this Court declined to stay remand, and are not collaterally estopped by an unpublished out-of-circuit decision that presented

entirely different issues in an entirely different context (and that Plaintiffs have never before raised, even though collateral estoppel would have rendered the Supreme Court's *Chevron* decision a fool's errand). None of Plaintiffs' attempts to evade controlling law can justify denying Defendants the federal forum that Congress has provided and that Defendants have consistently sought.

In the end, Plaintiffs' briefs prove only that they are willing to grasp at any straw to preserve their $744 million verdict—a verdict that resulted from seriously flawed state-court proceedings in a case that should never have been in state court in the first place and would face insurmountable obstacles in federal court. That extraordinary three-quarters-of-a-billion-dollar verdict is a perfect example of why Congress has decided that cases like this one should be heard in federal court, rather than in state courts where defendants who performed tasks that were nationally important, but (at least in hindsight) locally unpopular, struggle to get a fair hearing. Plaintiffs proclaim that "liability is inevitable" here, State.Opp.2, but not in the federal courts, as illustrated by this Court's emphatic rejection of Plaintiffs' underlying theory of liability in the one case that has been litigated in federal court. *See New Orleans City v. Aspect Energy, L.L.C.*, 126 F.4th 1047, 1052 (5th Cir. 2025). That decision underscores that the state-court verdict here cannot be permitted to stand, and that this Court should promptly return this case to federal court.

2

## ARGUMENT

## I.     Plaintiffs' Procedural Arguments Are Meritless.

Because they cannot seriously dispute the actual requirements for federal-officer removal, Plaintiffs raise a series of baseless procedural challenges. Those procedural challenges uniformly fail.

1. The State (but not the Parish) asks this Court to simply send this case back to the district court for further proceedings, without vacating the remand order and without opining on whether federal-officer removal was proper here. State.Opp.3, 8, 10-11, 53-54, 60. That makes no sense. The question of whether this case was properly removed to federal court is squarely before this Court on appeal. This Court presumably ordered highly expedited briefing and argument because of the pressing need for a final determination on whether this case belongs in federal court, before the state court enters final judgment on a massive state-court jury verdict in a case that should never have been in state court. Dkt.186; *see* Br.22-24. The State's remand proposal would not only leave the state court free to enter final judgment on that deeply flawed verdict, but would subject the parties to years of additional litigation in multiple district courts (and inevitable appeals to this Court) on removal issues that have been pending for nearly a decade and are squarely presented and fully briefed in this appeal. That misguided proposal has nothing to recommend it.

At a bare minimum, if this Court were to send this case back to the district court, it should vacate the remand order before doing so. As Plaintiffs concede, the sole basis for the currently unstayed remand order has now been squarely rejected by the Supreme Court. Br.1; *see* State.Opp.3; *Chevron*, 146 S.Ct. at 1060-63. Even if this Court were inclined to postpone deciding the issues presented in this appeal, it should not permit that clearly mistaken order to stand in the meantime.

2. The State next asserts that Defendants waived their right to a federal forum by participating in the state-court proceedings. State.Opp.12-19. That is beyond absurd. "Waiver, in [this] circuit, is no casual affair" and requires a "clear and unequivocal" demonstration of an "intent to remain in state court." *Abraham Watkins Nichols Agosto Aziz & Stogner v. Festeryga*, 155 F.4th 456, 460 (5th Cir. 2025). Defendants have demonstrated precisely the opposite, spending years doing everything possible to litigate this case in federal court—up to and including obtaining a unanimous Supreme Court decision in Defendants' favor. *Chevron*, 146 S.Ct. at 1060-63. Defendants participated in the state-court proceedings in the meantime only because they had no other choice after this Court denied a stay while their appeal was pending. *Plaquemines Par. v. Chevron USA, Inc.*, 84 F.4th 362, 373-75 (5th Cir. 2023) ("*Plaquemines III*"); Dkt.217 at 12-20. Given that decision, "further state proceedings [were] not avoidable and participating therein cannot constitute an involuntary waiver of [Defendants'] appeal" from the remand order.

4

*Fosdick v. Dunwoody*, 420 F.2d 1140, 1141 & n.1 (1st Cir. 1970). Indeed, courts find no waiver without even requiring the party appealing the remand order to seek a stay of that order. *See id.* at 1141; *see also* 159 A.L.R. Fed. 377, §2[b] (2000).

The State nevertheless repeatedly insists that Chevron waived its right to a federal forum by saying it was "ready and eager" to proceed to trial if the state court required it. State.Opp.4, 9, 15, 16, 18, 54 (twice). That is a remarkable misrepresentation. Chevron's counsel made that remark while arguing that the state court should *not* proceed to trial, because "while we're ready and eager to try the case, a judgment from this Court may turn out to be void" because this case really belongs in federal court. Dkt.110, Ex.A at 191-92. That is the opposite of a "clear and unequivocal" abandonment of Defendants' right to a federal forum. *Abraham Watkins*, 155 F.4th at 460.

The State claims that Defendants should have renewed their motion to stay the remand order before the state-court trial began. State.Opp.18-19. But by the time this case neared trial, this Court had rejected Defendants' removal arguments. *Plaquemines IV*, 103 F.4th at 342-43. Defendants accordingly had no plausible argument for a stay until the Supreme Court granted certiorari, at which point Plaintiffs themselves agreed to stay the state-court proceedings—a position that would have been incoherent if Plaintiffs truly believed that Defendants had already waived their right to a federal forum. *See* Dkt.217 at 16-18.

5

3. The State fares even worse in arguing that Defendants are collaterally estopped from making the "acting under" argument they already won unanimously in this Circuit by having lost an "acting under" argument in a Ninth Circuit climate change case, *City of Oakland v. BP PLC*, 2023 WL 8179286 (9th Cir. Nov. 27, 2023). State.Opp.20-29. That argument—which Plaintiffs have never before presented to any court in the three years since *Oakland* was decided—is plainly meritless. Collateral estoppel "preclude[s] relitigation of the same issue already litigated against the same party in another case involving virtually identical facts." *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 169 (1984). To apply, "the issue at stake must be identical to the one involved in the prior action." *In re Southmark Corp.*, 163 F.3d 925, 932 (5th Cir. 1999).

Those principles preclude estoppel here. While *Oakland* did involve a federal-officer removal argument, it had nothing to do with land loss in Louisiana, and the Ninth Circuit rejected that argument only because the specific "evidence supplied by the [defendants] merely confirms their compliance with the law while executing arms-length business agreements to supply fuel and build fuel infrastructure." 2023 WL 8179286 at *2. This case involves different alleged injuries, different relevant conduct, and specific federal contracts to refine avgas in accordance with precise government requirements—contracts that were not before the Ninth Circuit and that this Court has *already unanimously held* were sufficient

to show that Defendants were acting under federal direction. *Plaquemines IV*, 103 F.4th at 334-36; *see id.* at 345 (Oldham, J., dissenting). Plaintiffs cannot plausibly rely on *Oakland* to show collateral estoppel on an issue that this Court has already decided for Defendants.

4. Plaintiffs next contend that Defendants failed to plead with particularity in their notice of removal that they acted under a federal officer in refining avgas under their federal refining contracts. State.Opp.29-33; Par.Opp.4-10. That argument is wrong and waived several times over. *See, e.g.*, *In re Digicon Marine, Inc.*, 966 F.2d 158, 160 (5th Cir. 1992) ("[A]ll removal defects are waivable except for lack of original subject matter jurisdiction."); *accord In re Allstate Ins. Co.*, 8 F.3d 219, 222 (5th Cir. 1993) (failure to allege sufficient jurisdictional facts in a removal notice can be waived). Plaintiffs never presented that argument in the district court in this case, *see* ROA.36241-45, in this Court in the near-identical *Plaquemines IV* case, *see* 103 F.4th at 331-32, or in the Supreme Court in *Chevron*, *see* 146 S.Ct. at 1059-60. It cannot be raised for the first time now.

Regardless, Plaintiffs' waiver assertion is meritless. A removal notice need only "contain[] a short and plain statement of the grounds for removal." 28 U.S.C. §1446(a); *see Santee v. Oceaneering Int'l, Inc.*, 95 F.4th 917, 926 (5th Cir. 2024) (removal notice "need only 'adequately inform the plaintiff of the grounds for removal'"). Defendants' notice comfortably satisfied this standard, as it made clear

that Defendants were removing under §1442(a) because Plaintiffs' claims "implicate wartime and national emergency activities that certain Defendants undertook at the direction of federal officers." ROA.27, 37-39; *see Allman v. Hanley*, 302 F.2d 559, 562 (5th Cir. 1962) ("absence of detailed grounds setting forth basis for removal is not fatal," and an "allegation that petitioners were officers acting under color of office in the employment of the United States was sufficient"). And unlike the case Plaintiffs cite, Defendants have never attempted to change their statutory basis for removal. *Contra* State.Opp.32 (citing *Hinojosa v. Perez*, 214 F.Supp.2d 703, 707 (S.D. Tex. 2002)).

Of course, Defendants' lead theory was that their WWII-era predecessors "acted under" federal officers in producing crude oil, given the U.S. government's tight control over the entire oil industry during the war. *See* ROA.46-51. In *Plaquemines II*, however, this Court rejected that theory, while clarifying that "refineries, who had federal contracts and acted pursuant to those contracts, can likely remove under §1442." *Plaquemines Par. v. Chevron USA, Inc.*, 2022 WL 9914869, at *4 (5th Cir. Oct. 17, 2022). That observation underscores that defendants' refining activities were not some discrete unrelated theory of removal. Moreover, given that the whole thrust of the Supreme Court's *Chevron* decision is that refining and production were closely related in the unique context of WWII, the

8

suggestion that the removal notice covered only production blinks reality and defies Supreme Court precedent.[1]

## II.    Defendants Satisfy The Requirements For Federal-Officer Removal.

Plaintiffs' substantive arguments are likewise meritless.  Under the Supreme Court's decision in *Chevron* and this Court's decision in *Plaquemines IV*, Defendants readily satisfy the requirements for federal-officer removal.

### A.    Defendants "Act[ed] Under" Federal Officers in Fulfilling Government Contracts for Avgas During World War II.

First, Defendants acted under federal officers in refining avgas and other petroleum products for the federal government under federal contracts.  Indeed, as this Court unanimously recognized in *Plaquemines IV*, those contracts make this an "archetypal case" of acting under federal officers.  103 F.4th at 334-35.  Plaintiffs' scattered counterarguments are unpersuasive.

Plaintiffs have argued for years that Defendants did not act under federal direction in *producing* crude oil, but until now did not dispute that Defendants acted under federal direction in *refining* that crude oil into avgas for the federal government under their federal contracts.  *See Chevron*, 146 S.Ct. at 1060 n.2 (recognizing that "[n]o party dispute[d]" that Chevron's predecessor "'acted under'

---

[1] *Wood v. Crane Co.*, 764 F.3d 316 (4th Cir. 2014), which discusses amending a removal notice under 28 U.S.C. §1653, is irrelevant.  *See* State.Opp.32; Par.Opp.5-8.  Defendants are not trying to amend their removal notice, because the notice's unamended factual allegations are sufficient to support removal.

a federal officer when it refined crude oil into avgas for the military"). Plaintiffs' late-breaking argument that Defendants' federal refining contracts did not involve sufficient federal supervision to satisfy the "acting under" requirement, *see* State.Opp.37-38; Par.Opp.13, is thus plainly forfeited. *See Webster v. Kijakazi*, 19 F.4th 715, 720 (5th Cir. 2021) ("[A]rguments not raised before the district court are waived and cannot be raised for the first time on appeal.").

The argument is also meritless. As this Court has repeatedly explained, a "party 'working under a federal contract to produce an item the government needed' is the 'archetypal case' of a defendant 'acting under' a federal officer." *Plaquemines IV*, 103 F.4th at 334 & n.48; *see also Plaquemines II*, 2022 WL 9914869, at *2, *4. That is precisely this case. During WWII, Chevron's predecessor heeded the federal government's call to furnish the military with "critical" avgas to permit the United States to win the war. *Chevron*, 146 S.Ct. at 1058. Chevron's predecessor entered into a federal contract in which it "agreed to work 'day and night' to quadruple its avgas refining capacity"; it "agreed that the Government could request that it buy avgas components, including crude oil, from other firms"; and, "it agreed that the Government could 'at any time' purchase all of Chevron's excess avgas." *Chevron*, 146 S.Ct. at 1058; *see* ROA.34247-66. It further agreed to produce the military's avgas under "detailed specifications set by the federal government." ROA.31665; *see* ROA.36332-33. In return, the government agreed to finance multiple expansions

to Chevron's predecessor's refinery.  ROA.31744-45.  On that record, this Court readily concluded that Defendants "satisfy the 'acting under' requirement." *Plaquemines IV*, 103 F.4th at 335.

Plaintiffs now attempt to downplay Defendants' federal refining contracts as nothing more than "arm-lengths business agreements" for an "off-the-shelf product." State.Opp.37-38; *see* Par.Opp.15-16.  That characterization is squarely contradicted by the record.  Plaintiffs claim, for example, that avgas was "manufactured and sold for domestic use both during and after World War II."  State.Opp.37.  But as the record shows, the "government not only directed the nation's refineries to maximize 100-octane avgas production, but it also had a wartime monopsony over the product as the sole wartime purchaser of 100-octane avgas." ROA.31701.  Plaintiffs further claim that the avgas contracts lacked "detailed specifications."  Par.Opp.15.  But Defendants' contracts specified the make-up of the 100-octane avgas, provided for specified expansions to the Port Arthur refinery, and set out detailed delivery and inspection requirements.  ROA.32121-36.  As this Court unanimously concluded in *Plaquemines IV*, those facts more than suffice to show that Defendants acted under federal direction in fulfilling their federal refining contracts.  103 F.4th at 334-35; *see also* Br. for U.S. at 20-23, *Chevron*, 146 S.Ct. 1052 (U.S. Sept. 11, 2025) (same).[2]

---

[2] The Parish inexplicably suggests that the federal contracts at issue here somehow differ from those at issue in *Plaquemines IV*.  *See* Par.Opp.19-20.  That is

Plaintiffs observe that *Plaquemines IV* was vacated by the Supreme Court and so is not binding. State.Opp.38-39; Par.Opp.19. But the Supreme Court vacated *Plaquemines IV* only because it disagreed with the panel majority's analysis on the "relating to" element, not because of anything to do with the "acting under" element; on the contrary, the Supreme Court explicitly left the panel's unanimous holding on the "acting under" element undisturbed. *See Chevron*, 146 S.Ct. at 1060 n.2 (recognizing that "[n]o party disputes" this Court's holding that Chevron "'acted under' a federal officer when it refined crude oil into avgas for the military pursuant to a federal contract" (brackets omitted)).

The State contends that the parties in *Plaquemines IV* "did not squarely brief this issue," State.Opp.39, but Defendants spent seven pages of their opening brief there explaining how they satisfied the "acting under" requirement, *see* Br. for Defendants-Appellants at 24-31, *Plaquemines IV*, 103 F.4th 324 (5th Cir. Sept. 5, 2023). And the State is in no position to complain about Plaintiffs' briefing of the issue, given that it joined that briefing. *See* Br. for Plaintiffs-Appellees, *Plaquemines IV*, 103 F.4th 324 (5th Cir. Aug. 10, 2023).

---

incorrect. This case involves precisely the same contracts with Chevron's predecessor at issue in *Plaquemines IV*. *Compare Plaquemines IV*, 103 F.4th at 337, *with* ROA.31743-44; ROA.32121. If *Plaquemines IV* "failed to consider" whether those contracts contained "detailed manufacturing specifications," Par.Opp.19, that is only because Plaintiffs never raised the issue. *See supra* pp.9-10.

12

The State separately contends that Defendants fail the "acting under" requirement because Chevron's predecessor acted under an agency rather than a natural-born person. State.Opp.34. The State never raised that argument below, so it is likewise waived. *Webster*, 19 F.4th at 720. It is also directly foreclosed by this Court's precedent, which has repeatedly upheld federal-officer removal by persons who acted under the direction of a federal agency, rather than requiring them to explicitly name an individual federal official. *See St. Charles Surgical Hosp., L.L.C. v. Louisiana Health Serv. & Indem. Co.*, 935 F.3d 352, 356 (5th Cir. 2019) (finding the "acting under" requirement met after concluding that "the relevant federal superior is the Office of Personnel Management"); *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 291 (5th Cir. 2020) (federal-officer removal for defendant acting under contract with the Navy).

### B. Defendants' Production of Crude Oil During WWII "Relat[es] to" Their Federally Directed Refining Activities.

Defendants also readily satisfy the second element for federal-officer removal, as the Supreme Court held in its unanimous decision in *Chevron*. As *Chevron* makes clear, Plaintiffs' claims are "for or relating to" Defendants' performance of their federal duties.

In *Chevron*, after explaining that "[t]he phrase 'relating to' sweeps broadly," the Court held that "Chevron's case fits comfortably" within the ordinary meaning of a suit 'relating to' the performance of federal duties" because there was a "close

relationship" between Chevron's challenged oil-production activities and its refining activities. 146 S.Ct. at 1061. That decision unquestionably controls this case, which presents materially identical facts. This case involves the same avgas contracts, the same refinery, and the same refining processes; the only difference is that *Chevron* concerned the Delta Duck Club field, while this case concerns the Delacroix Island field. *Compare id.* at 1061-62, *with* ROA.36448. That is a distinction without a difference.

The Parish nevertheless strains to distinguish *Chevron*, arguing that because oil from the Delacroix Island field only accounted for a small percentage of the total oil refined at the Port Arthur refinery, and because the Port Arthur refinery also refined other wartime petroleum products as well as avgas, Chevron has failed to prove that its oil production in the Delacroix Island field relates to avgas refining at the Port Arthur refinery. Par.Opp.23-30. That argument profoundly misreads the Supreme Court's decision in *Chevron*. Nothing in *Chevron* remotely suggests that to invoke federal-officer removal jurisdiction, a defendant must specifically track every individual drop of oil at issue from its extraction in the field through the refining process to its delivery to the federal government as avgas. Instead, the Supreme Court made clear that by producing crude oil, Chevron was "supply[ing] avgas' essential feedstock," and that "if Chevron had refrained from these actions and produced less crude oil as a result, its avgas refining for the military may have

14

suffered." 146 S.Ct. at 1061-62. That inescapable relationship between the challenged crude oil production and the avgas refining in which Defendants engaged under their federal contracts showed that Plaintiffs' claims "relat[e] to" Defendants' actions under federal direction. *Id.* at 1060-63.

The Parish's argument conflicts not only with *Chevron*'s reasoning, but also with its result. The Delta Duck Club field at issue in *Chevron* produced even less oil than the Delacroix Island field. *Compare* ROA.31741, *with* ROA.31745-46. The Supreme Court nevertheless deemed that production sufficient to show that Chevron's oil-producing activities there were "closely connected to the performance of its federal duties." *Chevron*, 146 S.Ct. at 1062. The same analysis applies *a fortiori* here. Because Defendants' oil-producing activities furnished the "essential feedstock" on which Defendants relied to refine avgas for the federal government under their federal contracts, *Chevron* establishes that Plaintiffs' challenges to those activities relate to Defendants' acts under federal direction. *Id.* at 1060-63.

## C.    Defendants Satisfy the "Colorable Federal Defense" Requirement.

Finally, as every federal judge to have considered the question has concluded, Defendants "clearly" have at least one colorable federal defense. *Plaquemines IV*, 103 F.4th at 356 (Oldham, J., dissenting); *Riverwood*, 2022 WL 101401, at *6-7. In fact, Defendants have at least two such defenses: preemption and due process. Br.35-38.

15

1.  Plaintiffs resist that conclusion by suggesting that the colorable-federal-defense element has its own junior-varsity nexus requirement and can only be met by a federal defense that arises from "the conduct under color of federal office." State.Opp.49; *see* Par.Opp.35.  That is the same gambit that the Supreme Court unanimously rejected when Plaintiffs attempted to smuggle that nexus test into the acting-under element.  *See Chevron*, 146 S.Ct. at 1062-63.  The reality is that the only nexus requirement in the federal-officer-removal statute is the related-to requirement that Congress broadened in 2011 and the Supreme Court found satisfied on the facts of this case.   Neither the Supreme Court nor this Court has ever recognized Plaintiffs' proposed additional limitation on the colorable-federal-defense requirement, and Judge Oldham correctly declined Plaintiffs' invitation to impose it.  *See Plaquemines IV*, 103 F.4th at 355-56 (Oldham, J., dissenting).  As Judge Oldham explained, the colorable-federal-defense requirement "does not come from the text of §1442"; instead, it is superimposed on the federal-officer-removal statute to ensure that any case removed under that statute satisfies the minimum requirements of Article III.  *Id.* at 354.  Nothing in Article III or the federal-officer-removal statute requires that federal defense to arise from an official federal duty— for good reason, as the risk of local prejudice against federal officers stems from the nature of their activities, not the nature of their federal defenses, and a local jury ignoring a federal defense that flows from broader constitutional principles would

16

be as unjust as ignoring a federal defense flowing from the specifications in a federal contract.  *See* Br.38-39.

Plaintiffs rely heavily on *Mesa v. California*, 489 U.S. 121 (1989), but they miss the point of that case entirely.  *Mesa* involved two U.S. Postal Service drivers who committed criminal traffic violations while on duty.  *Id*. at 123.  Both drivers removed the subsequent state-court suits against them.  Their only basis for removal was that the conduct took place "while [each] defendant was on duty and acting in the course and scope of her employment."  *Id*.  They did not assert any federal defense of any kind—which is why the Supreme Court rejected removal.  *Id*. at 124. The Court explained that §1442(a) "is a pure jurisdictional statute" that "cannot independently support Art. III 'arising under' jurisdiction," and so to avoid possible "constitutional problems," the Supreme Court has long construed "all the various incarnations of the federal officer removal statute to require the averment of a federal defense."  *Id*. at 133-34, 136-37.  *Mesa* accordingly rejected the notion that §1442(a) itself supplies federal jurisdiction, and confirmed that federal-officer removal must be "predicated upon averment of a federal defense."  *Id*. at 139.  Nothing about that principle, however, requires that the federal defense also arise out of the defendant's federal duties.

Plaintiffs claim that *Mesa* relied on a "textual hook" that based the colorable-federal-defense requirement on the phrase "under color of such office" in §1442.

17

State.Opp.49. But *Mesa* simply quoted the language of the statute as it existed at the time (in 1989), which only permitted removal "for any act under color of such office." 489 U.S. at 124. Congress changed that language in 2011, amending the statute to permit removal of any suit "for *or relating to* any act under color of such office." 28 U.S.C. §1442(a)(1) (emphasis added). That amendment expressly "contemplate[d] removal of suits against officers or their agents for acts that were not done under color of their offices, so long as the suits 'relat[e] to' such acts." *Chevron*, 146 S.Ct. at 1063. Congress' deliberate decision to broaden the second element of the federal-officer-removal test cannot be judicially undone by reintroducing the same causal nexus test back into a different element—which is why the Supreme Court in *Chevron* squarely rejected that gambit when Plaintiffs tried it with the acting-under element. *Id.* at 1062-63.[3]

And even if there were a nexus requirement lurking in the colorable-federal-defense prong, it would be met here. As Defendants have already explained, *Chevron* makes clear that Defendants' "wartime crude-oil production was closely connected to [their] wartime avgas refining," highlighting that Defendants' preemption defense is squarely related to their fulfillment of their duties under their federal contracts. *Id.* at 1060; *see* Br.41-42. Plaintiffs have no response.

---

[3] The Parish cites other cases on this point, but all either pre-date the 2011 amendments or rely on language from pre-2011 cases without analyzing the post-2011 text. *Contra* Par.Opp.35-36, 39.

18

2. Plaintiffs' remaining challenges to Defendants' federal defenses are equally unavailing. Both procedurally and substantively, those defenses are readily sufficient to satisfy the colorable-federal-defense requirement.

a. *Preemption.* As both federal judges to consider the issue have agreed, Defendants "clearly" have a colorable federal preemption defense, as Plaintiffs' claims attempt to hold Defendants liable for following federal directives. *Plaquemines IV*, 103 F.4th at 356 (Oldham, J., dissenting); *Riverwood*, 2022 WL 101401, at *6-7.

Hoping to avoid the merits of that defense, the State makes the remarkable claim that Defendants somehow waived that defense by failing to raise it at the state-court trial. State.Opp.41-44. That is flatly wrong. First, "[t]he power to remove is evaluated at the time of removal," not based on subsequent events. *Fed. Sav. & Loan Ins. Corp. v. Griffin*, 935 F.2d 691, 696 (5th Cir. 1991); *accord Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The relevant question here is thus whether Defendants had a colorable federal defense *when they removed this case*; no element of post-removal trial strategy in the subsequent state-court proceedings (which should never have taken place in any event) can affect that question. Defendants were not required to present their federal defense in state court—and risk the very hostility to that federal defense that the federal-officer-removal statute exists to avoid—to preserve their right to a federal forum. The State

19

does not dispute that Defendants had a colorable federal preemption defense when they removed this case, and so this Court can find the colorable-federal-defense element satisfied on that basis alone.

Regardless, Defendants have a colorable federal preemption defense today, and certainly did not waive that defense in the state-court proceedings. Preemption is a legal question, not a factual one, and so "a judge, not the jury, must decide the pre-emption question." *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299, 310 (2019). Chevron accordingly raised federal preemption in state court as part of its pretrial conference statement, informing the state court that Plaintiffs' claims were barred by federal law and sought to impermissibly attack federal orders and permitting decisions.[4] And if this case were to proceed further in state court (which it certainly should not), Chevron would raise federal preemption again in its post-judgment motions, as Louisiana law permits. *See* La. Code Civ. Proc. Ann. art. 1972(1) (permitting post-trial motions on any ground asserting that "the verdict or judgment appears clearly contrary to the law"). The fact that Chevron did not ask the jury to rule on its preemption defense at trial—because that defense is a legal one, not a factual one—does not remotely mean that Chevron has somehow waived that defense. *Contra* State.Opp.41-44.

---

[4] Chevron's Pre-Trial Conference Statement, *Par. of Plaquemines v. Rozel Operating Co.*, No. 60-996, at 7 (La. Jud. Dist. Ct. Jan. 31, 2025).

20

Plaintiffs have even less to say on the merits of Defendants' preemption defense. The Parish faults Defendants for not citing a federal statute that might conflict with their claims. But Defendants have expressly identified relevant federal regulations and directives, which preempt state law (and state tort claims) just as statutes do. *See, e.g.*, *Monsanto Co. v. Durnell*, 2026 WL 1825691 (U.S. June 25, 2026) (finding EPA regulatory actions preempted state law and rejecting argument that only federal statutes could have preemptive effect); *cf.* Par.Opp.46 (recognizing that Judge Feldman found that Defendants have a viable federal preemption defense "if the PAW crude production regulations [are] deemed to be federal directives"). And contrary to what the Parish apparently believes, nothing in the Coastal Zone Management Act authorizes states to impose tort liability that conflicts with other federal law. *Contra* Par.Opp.45.

Finally, the Parish's belated attempt to extensively rewrite its expert report in this case to avoid any conflict with federal law comes nowhere near avoiding Defendants' colorable preemption defense. *Contra* Par.Opp.47-49. In evaluating federal-officer removal, a court must "credit [the removing defendants'] theory of the case," not the plaintiff's. *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999); *accord Chevron*, 146 S.Ct. at 1061. While Plaintiffs may disagree with Defendants over the extent of their federally directed activities and whether those activities contributed to the alleged injuries that Plaintiffs assert, those are disagreements that

21

must be resolved in federal court.  Because it "may have been impossible to comply with both the federal directives and Louisiana law" under Defendants' theory of the case, Defendants readily satisfy the colorable-federal-defense element. *Plaquemines IV*, 103 F.4th at 356 (Oldham, J., dissenting).

b. *Due process*.  Plaintiffs' procedural and substantive challenges to Defendants' due process defense fail as well.  Plaintiffs contend that Defendants failed to adequately plead that defense in their removal notice, but Plaintiffs themselves waived that argument by failing to raise it in the district court, and so this Court need not address it.  *See Digicon Marine*, 966 F.2d at 160; *supra* p.7. Regardless, Defendants did adequately plead their due process defense in their notice of removal, explaining that their "activities prior to the enactment of SLCRMA were carried out in compliance with applicable federal statutes, regulations and orders" and so Defendants "cannot be held liable under SLCRMA" for those lawful activities.  ROA.55-56.  While Defendants did not explicitly state that punishing a defendant for conduct that was lawful when it occurred is "a due process violation of the most basic sort," *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978), it is well established that "pleading standards don't demand such precision in terminology," *Sun v. TETRA Techs., Inc.*, 2023 WL 6892227, at \*3 (5th Cir. Oct. 19, 2023) (per curiam); *see* 28 U.S.C. §1446(a) (removal notice need contain only "a short and plain statement of the grounds for removal"); *supra* pp.7-8.  Defendants'

22

notice was sufficient to "adequately inform [Plaintiffs] of the grounds for removal," and nothing more was required. *Santee*, 95 F.4th at 926.

The State next contends that because the state court rejected Defendants' due process defense—in state-court proceedings that should never have happened at all—that federal defense is foreclosed and cannot support removal. Deeming a federal defense not colorable just because a state court rejected it ignores the whole thrust of the federal-officer-removal statute. As this Court has explained, "one of the most important reasons for [federal officer] removal is to have the validity of the [federal defense] tried in a federal court." *Butler v. Coast Elec. Power Ass'n*, 926 F.3d 190, 200 (5th Cir. 2019) (alterations in original). Unsurprisingly, the State presents exactly zero support for its contrary argument.[5]

On the merits, Plaintiffs again have no real argument that Defendants' due process defense is not at least colorable (indeed, meritorious). The Parish claims that due process "is not a *defense* to liability under federal law," Par.Opp.43, but that is plainly incorrect, *see, e.g.*, *Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994). The Parish also contends that Defendants' due process defense "rises out of the filing

---

[5] Likewise, the state court's rejection of Defendants' federal due process defense does not somehow show that the defense is not colorable. *Contra* State.Opp.47. That single adverse state-court decision comes nowhere near showing that Defendants' due process defense is "immaterial and made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous." *Zeringue v. Crane Co.*, 846 F.3d 785, 790 (5th Cir. 2017).

of this lawsuit," rather than Defendants' performance of their federal duties, but that makes no sense. *Contra* Par.Opp.43. Plaintiffs' suit attempts to hold Defendants liable for activities that are related to their performance of their federal duties, and that were lawful at the time; that attempt to impose retroactive liability both relates to Defendants' performance of their federal duties and violates due process, confirming that Defendants' due process defense should be heard in federal court. *See* Br.37-38. Finally, the Parish claims that due process is not implicated because Defendants "fail to point to any liberty or property interest they have actually lost" as a result of the Parish's claims. Par.Opp.43-44. That argument is beyond astonishing, given that Plaintiffs are presently trying to have judgment entered on a three-quarters-of-a-billon-dollar verdict against Defendants. *Bunol v. George Engine Co.*, 996 F.2d 67, 69 (5th Cir. 1993) (money is a property interest). Needless to say, the Parish cites no case holding that a defendant can never raise a federal due process defense against a retroactive statute because the defendant will not lose any property until judgment is actually entered against them. *Contra* Par.Opp.43-44.

## III.    The Post-Removal State Proceedings Have No Effect.

The State saves its most extraordinary arguments for last, making a series of increasingly improbable (and incorrect) assertions in a last-ditch attempt to save its $744 million state-court verdict. This Court should explicitly reject those arguments

24

and make clear beyond any doubt that the state court's erroneous post-removal proceedings in this case are a nullity.

First, the State asserts that even if this Court (correctly) reverses the district court's erroneous remand order and confirms that removal was proper, the district court should simply "take the case as it finds it and treat[] the state court rulings as its own." State.Opp.55-56 (brackets omitted) (quoting *In re Ala. & Dunlavy, Ltd.*, 983 F.3d 766, 773 (5th Cir. 2020)). That is flatly incorrect. The rule that the State invokes applies to state-court proceedings that occur *before* removal, *see Ala. & Dunlavy*, 983 F.3d at 773, not (as here) state-court proceedings that occur *after* an erroneous remand order. By contrast, where an erroneous remand order is reversed or vacated on appeal, it produces the same result as any other reversed or vacated order: namely, "the matter stands precisely as if there had been no [remand order]," and the order "lacks force or effect and places the parties in the position they occupied before entry of the [order]." *Def. Distributed v. Platkin*, 55 F.4th 486, 491 (5th Cir. 2022). As a result, once the erroneous remand order is reversed, "any post-removal proceedings in the state court are considered coram non judice and will be vacated by the federal court." 14C Fed. Prac. & Proc. §3736 (4th ed. 2026).

The State disputes that result, claiming that Defendants "misrepresent[]" that treatise because the cited section "is referring to a situation where a case has been removed and not remanded." State.Opp.56 (emphasis omitted). But once an

25

erroneous remand order has been reversed, it is void *ab initio*, making the case indistinguishable from one in which no remand order was ever entered. *Def. Distributed*, 55 F.4th at 491. And neither §1446(d) nor §1447(c) changes that result; those statutes allow the state court to proceed after a remand order is entered, but neither alters the retroactive effect of an appellate decision reversing that remand order. *Contra* State.Opp.56-57. That is hardly surprising; after all, Congress allowed defendants in federal-officer removal cases to appeal remand orders to vindicate their right to a federal forum without providing for an automatic stay of post-remand-order state-court proceedings. *See* 28 U.S.C. §1447(d). Treating any state court proceedings that may occur after an erroneous remand order as permanent and immutable would eviscerate Congress' considered decisions and effectively force courts to grant stays in every case to prevent irreversible state-court proceedings.

Second, and even less plausibly, the State contends that even after this Court reverses the remand order, the state court *can still continue to adjudicate this case*—flatly ignoring Defendants' right to a federal forum and the district court's removal jurisdiction. State.Opp.57-58. That is indefensible. Once this Court reverses the district court's remand order, that order will be nullified, *see Def. Distributed*, 55 F.4th at 491, meaning that the case will again be in federal court and the state court will have no jurisdiction to proceed, *see* 28 U.S.C. §1446(d). The First Circuit

26

decision that the State cites confirms the point, making clear that the district court can simply "restore the action to its own docket" once an erroneous remand order is reversed. *Forty Six Hundred LLC v. Cadence Educ., LLC*, 15 F.4th 70, 78-81 (1st Cir. 2021). Nothing in that decision authorizes a state court to proceed even after a federal appellate court has reversed the remand order and confirmed the defendant's right to a federal forum. *Contra* State.Opp.57-59.

Finally, the State suggests that a decision reversing the remand order would "effectively enjoin[] the state trial court from continuing proceedings" and so is barred by the Anti-Injunction Act. State.Opp.59-60. But even the State cannot manage to fully commit itself to that argument—which is unsurprising, as every order permitting removal has the effect of halting proceedings in state court, and no one has ever thought standard and congressionally authorized removal procedures somehow run afoul of the Anti-Injunction Act. The same thing is true of orders that reverse erroneous remand orders. Any other result would eviscerate Congress' explicit decision to permit appeals from remand orders in federal-officer removal cases. 28 U.S.C. §1447(d).

When the Supreme Court considered these issues in *Chevron*, the massive jury verdict in this case was Exhibit A for the importance of a federal forum. Plaintiffs' efforts to preserve that massive verdict despite their unanimous loss in *Chevron* with a series of strained arguments, most of which have never surfaced before in this

27

litigation, including in the brief in opposition in *Chevron*, are frivolous and would plainly frustrate the Supreme Court's evident intent.

## CONCLUSION

This Court should reverse the remand order.

Dated: July 24, 2026

GEORGE ARCENEAUX III
LISKOW & LEWIS
1200 Camellia Boulevard, Suite 300
Lafayette, LA 70508

JENNIFER R. KWAPISZ
ARNOLD & PORTER KAYE
   SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710

***Counsel for Atlantic Richfield
Company***

Respectfully submitted,

s/Paul D. Clement
PAUL D. CLEMENT
   *Counsel of Record*
C. HARKER RHODES IV
JOSEPH J. DEMOTT
ILAN J. POSNER
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

JENNIFER J. CLARK
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005

STEVEN P. LEHOTSKY
LEHOTSKY COHN LLP
200 Massachusetts Ave. NW, Suite 700
Washington, DC 20001

ALEXANDRA WHITE
ERIC J. MAYER
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002

28

CHARLES S. MCCOWAN III
PAMELA R. MASCARI
KEAN MILLER LLP
II City Plaza
400 Convention St., Suite 700
Post Office Box 3513 (70821)
Baton Rouge, LA 70802

MICHAEL R. PHILLIPS
CLAIRE E. JUNEAU
KEAN MILLER LLP
909 Poydras Street, Suite 3600
New Orleans, LA 70112

***Counsel for Chevron U.S.A. Inc.,
Chevron U.S.A. Holdings Inc., and
The Texas Company***

# CERTIFICATE OF COMPLIANCE

I certify that:

1) This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,479 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32.2.

2) This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

3) Any required privacy redactions have been made pursuant to Circuit Rule 25.2.13, the electronic submission is an exact copy of the paper submission, and the brief has been scanned for viruses using Windows Defender and is free of viruses.

July 24, 2026

s/Paul D. Clement
Paul D. Clement

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/Paul D. Clement
Paul D. Clement
